776 F.2d 166
 Unempl.Ins.Rep. CCH 16,379
Edna JOHNSON and Jerome Montgomery, on their own behalf and
on behalf of all others similarly situated,
Plaintiffs-Appellees,
v.
Margaret M. HECKLER, Secretary, U.S. Department of Health
and Human Services, Defendant-Appellant.
 Nos. 85-1254, 85-1490.
 United States Court of Appeals,
Seventh Circuit.
 Oct. 30, 1985.
 
 Mark B. Stern, Dept. of Justice, Appellate Staff, Washington, D.C., for defendant-appellant.
 Joseph A. Antolin, Legal Assistance Foundation of Chicago, Chicago, for plaintiffs-appellees.
 Before BAUER and WOOD, Circuit Judges, and GRANT, Senior District Judge.*
 PER CURIAM.
 
 
 1
 On September 9, 1985, the appellant filed a petition for rehearing and suggestion of rehearing en banc in this case. All of the judges on the panel have voted to deny the petition for rehearing. One of the judges in regular active service requested a vote on the suggestion of rehearing en banc, which failed to receive the votes of a majority. Judges Eschbach, Posner, Coffey, Easterbrook, and Ripple voted to grant rehearing en banc.
 
 The petition for rehearing is
 
 2
 DENIED.
 
 
 3
 EASTERBROOK, Circuit Judge, with whom ESCHBACH, POSNER, and COFFEY, Circuit Judges, join, dissenting.
 
 
 4
 The court denies rehearing en banc in this case by an equal division of the judges. Our inability to proceed is not likely to be the end, however. This case has three issues: (1) whether a court may rule on substantive questions in pending disability cases prior to the Secretary's decision; (2) whether a court may order the reopening of cases when the suit is filed more than 60 days after the administrative decision became final; (3) whether the regulations (the Step Two rules) used to determine the existence of a "severe" impairment are unlawful. The Supreme Court has granted review of the first two issues. City of New York v. Heckler, 742 F.2d 729 (2d Cir.1984), cert. granted, --- U.S. ----, 106 S.Ct. 57, 88 L.Ed.2d 46 (1985); Owens v. Heckler, No. CV-2436-WMB (C.D.Cal. Aug. 28, 1984), prob. jur. noted, --- U.S. ----, 106 S.Ct. 223, 88 L.Ed.2d 223 (1985). The third issue affects tens of thousands of administrative cases every year and deserves review independently.
 
 
 5
 1. Califano v. Yamasaki, 442 U.S. 682, 701, 704, 99 S.Ct. 2545, 2557, 2559, 61 L.Ed.2d 176 (1979), holds that every member of a class must independently satisfy all requirements of suit. That means that a court must ask, with respect to the class members whose claims are pending before the Secretary, whether they could have filed individual suits seeking declaratory judgments that the Step Two rules violate the statute. The answer is no. The pertinent statute, 42 U.S.C. Sec. 405(g), states that a person may sue only after a "final decision of the Secretary". When a person still has a claim pending there is no "final decision."
 
 
 6
 The panel concluded that the final decision requirement is "waivable" by the court. 769 F.2d 1202 "Waiver" does not come naturally to a finality requirement. Finality in the sense of "the last order in the case" is familiar under 28 U.S.C. Sec. 1291, and no one thinks a court may "waive" this requirement to hear an interesting and important legal issue in mid-case. See, e.g., Richardson-Merrell, Inc. v. Koller, --- U.S. ----, 105 S.Ct. 2757, 86 L.Ed.2d 340 (1985); Coopers & Lybrand v. Livesay, 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978). Finality in the sense of administrative exhaustion is a bit different, for here finality is designed for the protection of the administrative process. Again a court may not excuse the lack of finality. FTC v. Standard Oil Co., 449 U.S. 232, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980). If anyone may waive the requirement, that must be the Secretary rather than the court. Weinberger v. Salfi, 422 U.S. 749, 766 & n. 9, 95 S.Ct. 2457, 2467 n. 9, 45 L.Ed.2d 522 (1975), accordingly held that the Secretary may, by regulation, stipulate that an interim step is "final." See also Heckler v. Ringer, 466 U.S. 602, 104 S.Ct. 2013, 2017 & n. 2, 80 L.Ed.2d 622 (1984). But the regulation on the point, 20 C.F.R. Secs. 404.923-404.928, allows immediate review only when the claimant attacks the constitutionality of part of the Act and all other issues have been settled.
 
 
 7
 The Supreme Court used the language of "waiver" to assess jurisdiction to hear social security cases in Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed. 2d 18 (1976). The use of "waiver" in Eldridge was consistent with the practice of finality under Sec. 1291. The question in Eldridge concerned a constitutional entitlement to a pre-termination hearing. If that question is not reviewable immediately, it never is. The decision therefore could be said to be "final" in the same sense a collateral order is final: (a) it is irremediable on appeal, and (b) it has nothing to do with the merits. See Mitchell v. Forsyth, --- U.S. ----, 105 S.Ct. 2806, 2815-17, 86 L.Ed.2d 411 (1985). Here, however, the question at issue has everything to do with the merits of a claim for benefits, and if the Secretary is wrong the validity of the Step Two rule is reviewable on appeal. The panel held the Step Two regulations invalid precisely because they affect the merits of cases. And it also pointed out (769 F.2d at 1208) that in many of the class members' cases the Step Two regulations will be irrelevant: the claimants may meet the regulations as they are, or they may fail on other grounds. This decision is about as intertwined with the merits as they come. Under Richardson-Merrell it cannot be "collateral."
 
 
 8
 The Fourth Circuit has said that a court may excuse administrative exhaustion only when the question is "wholly collateral" to the claim for benefits, see Hyatt v. Heckler, 757 F.2d 1455, 1460 (1985), and that is the right approach. Accord, Hatcher v. Heckler, 772 F.2d 427, 430-32 (8th Cir.1985). Ringer, in which the Supreme Court held review impermissible because the regulation attacked by the plaintiff was "intertwined" with the merits of the case (see 104 S.Ct. at 2023-24), all but compels it. As the Court said, the "waiver" approach "is inapplicable here where respondents do not raise a claim that is wholly 'collateral' to their claim for benefits under the Act." 104 S.Ct. at 2023 (emphasis added).
 
 
 9
 It is tempting to say: Who cares? Once the court has held the regulations invalid in a case in which the plaintiff did exhaust, the other claimants still in the works get the benefit. Perhaps, but the real problem lies in future decisions. The decision does not (and under Yamasaki cannot) turn on the fact that these plaintiffs are rolled into a class rather than filing individual suits. The holding of this case is that anytime a claimant challenges a regulation of the Secretary--a regulation an ALJ cannot alter--the claimant may seek review of that regulation without obtaining a final decision on the merits. That cannot be squared with Ringer. There are thousands of regulations, millions of claimants. This decision could multiply substantially the number of suits filed in pursuit of benefits. The finality requirement of Sec. 405(g) was intended to prevent this.
 
 
 10
 2. The panel also held that the class may contain people who did not file suit within 60 days of receiving a final decision, as Sec. 405(g) requires. This means that closed cases must be reopened, and in substantial numbers. The rationale is that the 60 day rule is a "statute of limitations," which is waived if not pleaded in the answer to the complaint. 769 F.2d at 1208-09. Although two of the Supreme Court's cases (Salfi and Eldridge ) use the words "statute of limitations" in referring to the 60 day rule, neither case concerned the appropriate characterization of the time limit. Several other circuits preceded our panel in following the Supreme Court's dictum, but I think they have given the Court's casual words altogether too much weight. See Reiter v. Sonotone Corp., 442 U.S. 330, 341-42, 99 S.Ct. 2326, 2332, 60 L.Ed.2d 931 (1979); Zenith Radio Corp. v. United States, 437 U.S. 443, 459-62, 98 S.Ct. 2441, 2449-51, 57 L.Ed.2d 337 (1978).
 
 
 11
 The problem with the characterization is that this is a suit against the United States. Time limits in suits against the United States are not ordinary statutes of limitations. They are substantive conditions on the consent to suit, and they apply unless expressly surrendered. Soriano v. United States, 352 U.S. 270, 275-76, 77 S.Ct. 269, 272-73, 1 L.Ed.2d 306 (1957); Munro v. United States, 303 U.S. 36, 41, 58 S.Ct. 421, 423, 82 L.Ed. 633 (1938); Finn v. United States, 123 U.S. 227, 232-33, 8 S.Ct. 82, 85, 31 L.Ed. 128 (1887). Cf. Lehman v. Nakshian, 453 U.S. 156, 160, 101 S.Ct. 2698, 2701 (1981) (the United States is immune from suit save as it consents, "and the terms of its consent define the court's jurisdiction to entertain the suit"). Belatedly raising the point in the district court is not an active surrender. It is closer to an act of negligence by the government's lawyer, an act that ought not eliminate a statutory limit on litigation against the United States.
 
 
 12
 3. The decision on the merits of the Step Two rules has substantial continuing importance. In administering any program of this scope, the Secretary must lay down rules that confine the discretion of the administrative law judges. There are more than 800 ALJs in the social security system, each with a different approach to disability cases. In order that the program not deteriorate into inconsistent and arbitrary decisions turning more on the ALJs' charity than on legal criteria, there must be rules. The rules must have teeth to be effective. Yet all rules with teeth also may yield error. When the Secretary strives for generality and consistency, she creates a risk that some people who might have qualified for benefits under an approach of unguided case-by-case decisionmaking will lose out. See DeLong v. Heckler, 771 F.2d 266, 268 (7th Cir.1985); Stephens v. Heckler, 766 F.2d 284, 285-86, 288-89 (7th Cir.1985); Garrison v. Heckler, 765 F.2d 710, 714 (7th Cir.1985); cf. Jerry L. Mashaw, Bureaucratic Justice: Managing Social Security Disability Claims 106-23 (1983).
 
 
 13
 The panel's decision holding the definition of "severe" impairment invalid points to this potential for error. The potential is there; it is there whenever rules exist. Yet unless the rules create too many improper denials of benefits, they do more good than harm. The rules involved here do not create a very large risk of erroneous denial. The Secretary's regulations are meek. They make the test whether an impairment "significantly" limits the ability to work. In cases such as Taylor v. Schweiker, 739 F.2d 1240, 1243 n. 2 (7th Cir.1984), and Wallschlaeger v. Schweiker, 705 F.2d 191 (7th Cir.1983), we characterized this as a useful screen to focus attention on a threshold requirement to filter out people without a hope of getting benefits, and to direct the attention of the ALJs to those with serious cases. The ALJs have a hard enough time as it is; I do not think claimants as a whole will gain from a judicial order that hinders this intelligent process through which the claimants with the best cases receive the most attention. (The panel's decision does not specify whether it bars the use of any Step Two hurdle or whether it just thought this step too high. I assume it meant the former, because the way the regulation is worded it is hard to imagine a lower step that would serve any purpose.)
 
 
 14
 If there were something in the statute that forbade the Step Two rules or the sequential process in general, that would be that. But the statute calls for the Secretary to determine disability and is all but empty of advice about how to do this. The Secretary has had to make it up as she goes along. The argument that the Step Two rules focus attention in a way that will lead people to slip through the cracks could be made against every other regulation in C.F.R. The Supreme Court has held, however, that because of the vague nature of the mandate the Secretary has especially broad authority to issue regulations. E.g., Herweg v. Ray, 455 U.S. 265, 275, 102 S.Ct. 1059, 1066, 71 L.Ed.2d 137 (1982); Schweiker v. Gray Panthers, 453 U.S. 34, 44, 101 S.Ct. 2633, 2640, 69 L.Ed.2d 460 (1981). Some error is inevitable. How much is too much--and therefore how much rulishness is best--are administrative matters. Only someone with knowledge of the entire process, including other occasions for error and ways in which risks of error may be offset, is in a good position to make such a decision. That someone is the Secretary.
 
 
 15
 The Vocational Grid is much more restrictive, and it creates a much greater chance of slipping through the cracks than do the Step Two rules. Yet the Court sustained the Grid as a useful though imperfect way to carry on an almost impossibly difficult task. Heckler v. Campbell, 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983). It remarked: "Where, as here, the statute expressly entrusts the Secretary with the responsibility for implementing a provision by regulation, our review is limited to determining whether the regulations promulgated exceed the Secretary's statutory authority and whether they are arbitrary and capricious." Id. at 466, 103 S.Ct. at 1957. The Court cited a series of cases in which it has sustained other regulations concerning the Social Security Act. See Herweg and Gray Panthers. All of those regulations have the defect the panel found in the Step Two rules--the potential to deny benefits to people who might get them after a fuller inquiry.
 
 
 16
 More recently the Court has held that unless the statute in express terms settles a dispute, a court ought not interfere with the program of implementation selected by the responsible agency. Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 2782-83, 81 L.Ed.2d 694 (1984). Nothing in the social security statute addresses phased decisionmaking such as the Step Two rules. No debates in Congress indicate dissatisfaction with the way the Secretary is proceeding. To the extent the 1984 amendments bear on the question, they support the Secretary's position. Section 4(a)(1) of the amendments requires: "If the Secretary does find a medically severe combination of impairments, the combined impact of the impairments shall be considered throughout the disability determination process." This suggests that Congress knew of and approved the sequential process in which "severity" is one step. I therefore think we should leave questions like this to the administrators, who both tailor the rules to the entire program and bear political responsibility for the results.
 
 
 
 *
 The Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation