Bruce CRAWFORD, Plaintiff-Appellant,

v.

UNITED STATES of America,
Defendant-Appellee.

No. 85–3085.

United States Court of Appeals,
Seventh Circuit.

Submitted June 11, 1986.

Decided July 17, 1986.

day limitation. *United States v. Ames,* 743 F.2d 46 (1st Cir.1984).

William O. Krohn, Robert J. Jenkins, Krohn & Najib, Chicago, Ill., for plaintiff-appellant.

Anton R. Valukas, U.S. Atty., James T. Hynes, Elizabeth Stein, Asst. U.S. Attys., Chicago, Ill., for defendant-appellee.

Before CUDAHY, POSNER and EASTERBROOK, Circuit Judges.

POSNER, Circuit Judge.

The district court granted the government's motion to dismiss Bruce Crawford's suit under the Federal Tort Claims Act as untimely, see 28 U.S.C. § 2401(b), and he appeals, presenting a question of some complexity concerning proof of timeliness in a suit under the Act.

In 1980 Crawford, who was then 19 years old and afflicted with Sturge-Weber Syndrome (as an alleged consequence of which he was mentally retarded and experienced seizures), was injured on a sidewalk in Illinois when he tripped over metal spikes that had been left in the ground when a U.S. mailbox had been removed. He was taken to a hospital and treated; his mother was with him at the hospital. The next day, accompanied by his stepfather, he visited his regular doctor. But he waited more than four years before filing a claim with the Postal Service; section 2401(b) gave him only two. He argues that he lacked the mental capacity to discover that the Postal Service had caused his injury, and concludes from this that the statute of limitations was tolled. He cites for this proposition *Washington v. United States*, 769 F.2d 1436, 1438–39 (9th Cir.1985); *Clifford v. United States*, 738 F.2d 977 (8th Cir.1984), and *Zeidler v. United States*, 601 F.2d 527, 531 (10th Cir.1979).

The statute of limitations in the Federal Tort Claims Act grants "any person under legal disability" at the time his claim accrues three years in which to file suit after the disability ends. 28 U.S.C. § 2401(a). However, there is no reference to legal disability in section 2401(b), the administrative statute of limitations (that is, the deadline for filing a claim with the agency alleged to be responsible for the accident, here the Postal Service) that Crawford failed to comply with. This omission has led several courts to conclude that insanity does not toll the administrative statute of limitations. See *Casias v. United States*, 532 F.2d 1339, 1342 (10th Cir.1976), and cases cited there; cf. *Swietlik v. United States*, 779 F.2d 1306, 1311 (7th Cir.1985). Presumably these courts would treat men-

tal retardation similarly. Cf. *Jastremski v. United States*, 737 F.2d 666, 669 (7th Cir. 1984) (infancy); *Leonhard v. United States*, 633 F.2d 599, 624 (2d Cir.1980) (same); *Robbins v. United States*, 624 F.2d 971, 972 (10th Cir.1980) (same).

■ The difference in the treatment of mental incapacity under the two subsections, though supported by their different language (subsection (a) contains a tolling provision for legal disabilities, and (b) does not), seem tenuous. Since by definition a person under legal disability cannot sue unless he has a guardian or other representative, the tolling provision in (a) may simply have been included to avoid the absurdity of telling a person who as a matter of law cannot sue that he must sue or lose his rights. But as far as we know there is no such thing as being legally incapable of filing an administrative claim; so maybe the omission of any reference to legal disability in subsection (b) should not be taken to foreclose an appeal to some notion of or akin to equitable tolling. It is true, as the cases just cited emphasize, that equitable tolling is rarely (though not never—see *Bowen v. City of New York*, — U.S. —, 106 S.Ct. 2022, 2029–30, 90 L.Ed.2d 462 (1986)) allowed in suits against the federal government. But equitable tolling is based on concealment or other misconduct by the defendant; and thus when applied to statutes of limitations against the government it penalizes the taxpayer because of the unauthorized acts of his servant, the civil servant. A doctrine that tolls the statute of limitations because of some incapacity of the plaintiff, like a discovery rule (about which more momentarily), is not founded on misconduct by government agents.

*Washington* and the other cases cited earlier make an exception to the rule against tolling if the government's alleged negligence on which the suit is based is also the cause of the plaintiff's mental incapacity, and the incapacity prevents him from discovering the injury or its cause; in two of the cases the alleged negligence had sent the plaintiff into a coma. The excep-

tion might or might not reach the present case, depending on the precise form of the exception; the complaint alleges that the accident aggravated, though it did not cause, Crawford's mental incapacity. But in any event this circuit has never decided whether there should be such an exception. The cases that recognize the exception appeal to the "discovery rule," whereby a cause of action does not accrue until the plaintiff did or should have discovered the cause of his injury. The rule is applied in suits under the Federal Tort Claims Act, see, e.g., *Drazan v. United States*, 762 F.2d 56, 58–59 (7th Cir.1985), but it focuses on the nature of the injury rather than on the idiosyncracies of the plaintiff. This is apparent from *United States v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979). (This is the case usually though imprecisely taken to have established the existence of the discovery rule in cases under the Tort Claims Act; actually the Court merely assumed the applicability of the rule to such cases, see *id.* at 120–21, 100 S.Ct. at 358–59. The assumption has, however, more than the usual significance, since it was based on a concession by the Solicitor General that the discovery rule is proper in cases under the Tort Claims Act.) The Court indicated that the statute of limitations would not have been suspended even if Kubrick had been advised that he had no cause of action. See *id.* at 124, 100 S.Ct. at 360; see also *Nemmers v. United States*, 795 F.2d 628, 631–32 (7th Cir. 1986). If the running of the statute of limitations depended on what the particular plaintiff actually knew given his mental or other incapacities, the discovery rule would swallow most of the provisions related to tolling, at least for disabilities that affected cognition and were in existence at the time of the accident.

 Fortunately we shall not have to decide in this case when if ever mental incapacity tolls the administrative statute of limitations, because even if it can toll it Crawford must lose. We mention the issue only to make clear that we regard it as open. As a final prefatory point we note that if Crawford had been a minor when the accident occurred (but he was not—the age of majority in Illinois is 18), his lack of mental capacity would be irrelevant. The cases that hold that infancy does not toll the administrative statute of limitations imply that a parent is an adequate surrogate; and *Fernandez v. United States*, 673 F.2d 269, 271 (9th Cir.1982), so holds. By similar reasoning, the statute would not be tolled if Crawford had had a guardian or conservator. See, e.g., *Washington v. United States, supra*, 769 F.2d at 1439. But he did not have one.

The government filed a motion to dismiss under Fed.R.Civ.P. 12(b) supported by an affidavit and other documents; but the motion did not reveal which subsection of Rule 12(b) it was being filed under. The district judge did not indicate whether he was treating the motion as one for summary judgment or, if not, on what other basis he thought he was proceeding when he granted it. All that is clear is that Crawford wanted a more extensive evidentiary hearing on the issue of his mental capacity.

 If a defendant moves to dismiss the complaint under Rule 12(b)(6) (failure to state a claim) and attaches evidentiary materials, the motion is treated as a motion for summary judgment (see last sentence of Rule 12(b)), so that the question for the judge is whether the defendant has shown that "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). There is no similar conversion feature when the motion is made under Rule 12(b)(1) (lack of subject-matter jurisdiction). *Malak v. Associated Physicians, Inc.*, 784 F.2d 277, 279 (7th Cir.1986). Although as we said the government did not trouble itself to indicate which subsection of Rule 12(b) it was moving to dismiss Crawford's complaint under (an unaccountable omission), probably it was Rule 12(b)(1), since statutes of limitations in most suits against the federal government, including suits under the Tort Claims Act, are held to be jurisdictional. See, e.g.,

*Charlton v. United States,* 743 F.2d 557, 558 (7th Cir.1984) (per curiam); *Burns v. United States,* 764 F.2d 722, 724 (9th Cir. 1985); *In re Swine Flu Products Liability Litigation,* 764 F.2d 637, 638 (9th Cir.1985). "In any suit against the United States, the statute of limitations is an integral part of the government's consent to suit, and as such is an issue of subject matter jurisdiction that cannot be waived." *Walters v. Secretary of Defense,* 725 F.2d 107, 112 n. 12 (D.C.Cir.1983); cf. *Johnson v. Heckler,* 776 F.2d 166, 168 (7th Cir.1985) (opinion dissenting from denial of rehearing en banc), citing cases. Like almost every legal generalization, this one has exceptions, a notable example being claims for benefits under the social security act. See *Bowen v. City of New York, supra,* 106 S.Ct. at 2029, and n. 10. But the cases cited above indicate that claims under the Tort Claims Act are not among them; nor shall we attempt to reassess the authority of these cases in light of the Supreme Court's recent but very brief discussion in *Bowen* of the 60-day statute of limitations in social security cases. Hence the district judge was obliged to treat the motion to dismiss, based as it was on the plaintiff's allegedly having failed to sue within the time provided by section 2401(b), as jurisdictional regardless of how the government had characterized it.

■ Whether the judge did so or not is unclear. It is a common practice in Tort Claims Act cases to treat the government's motion to dismiss the complaint on the ground that it is untimely as a motion for summary judgment if an evidentiary submission accompanies the motion. See, e.g., *Green v. United States,* 765 F.2d 105, 107 (7th Cir.1985); *In re Swine Flu Products Liability Litigation, supra,* 764 F.2d at 642; *Snyder v. United States,* 717 F.2d 1193, 1195 (8th Cir.1983); *Hanna v. United States Veterans' Administration Hospital,* 514 F.2d 1092, 1094–95 (3d Cir.1975). But the practice, however common, is not consistent with Rule 12(b). Cf. *Stanley v. CIA,* 639 F.2d 1146, 1158–59 (5th Cir.1981). And decisions that fail to remark a jurisdictional issue are not assumed to have re-

solved it by their silence. See, e.g., *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 119, 104 S.Ct. 900, 918, 79 L.Ed.2d 67 (1984); *Hagans v. Levine,* 415 U.S. 528, 533 n. 5, 94 S.Ct. 1372, 1377 n. 5, 39 L.Ed.2d 577 (1974); *Walters v. Secretary of Defense, supra,* 725 F.2d at 112 n. 12.

■ We are not being nitpickers in insisting on the difference between a jurisdictional determination and summary judgment. The purpose of summary judgment is to determine whether a trial can be averted. If the party moving for summary judgment fails to demonstrate that there is no triable issue, the case proceeds to trial (assuming that additional discovery does not provide a basis for a subsequent motion for summary judgment that is granted). But no case can properly go to trial if the court is not satisfied that it has jurisdiction. The fact that the summary judgment proceeding may not resolve a jurisdictional issue definitively is no ground for assuming jurisdiction and proceeding to trial. The jurisdictional issue must be resolved first. *Indium Corp. of America v. Semi-Alloys, Inc.,* 781 F.2d 879, 883–84 (Fed.Cir. 1985). The omission from the Federal Rules of Civil Procedure of a provision for converting a Rule 12(b)(1) motion into a summary judgment motion if evidence is submitted with it was not an oversight.

■ If the defendant thinks the court lacks jurisdiction, his proper course is to request an evidentiary hearing on the issue. Of course he can and should support the request with affidavits or other documents that might obviate the need for oral testimony; and, treating the summary judgment procedures in Fed.R.Civ.P. 56 loosely as a form of trial by affidavit, the court may look to those procedures for guidance in organizing a documentary inquiry into jurisdiction. See *Exchange Nat'l Bank v. Touche Ross & Co.,* 544 F.2d 1126, 1131 (2d Cir.1976); see generally 5 Wright & Miller, Federal Practice and Procedure § 1350 (1969). Often the only evidence necessary to resolve a jurisdictional

issue is documentary, as in a diversity case where there is a question as to what state a party is a citizen of. See, e.g., *Goldstick v. ICM Realty*, 788 F.2d 456, 458 (7th Cir. 1986). If oral testimony is necessary, the defendant should ask the district court to hold a hearing at which the necessary witnesses will testify. And of course once the district judge has reason to believe that there is a serious jurisdictional issue, he is obliged to resolve it before proceeding to the merits even if the defendant, whether as a matter of indolence or of strategy, does not press the issue.

██ No format is specified by statute or rule for evidentiary hearings on jurisdiction; any rational mode of inquiry will do. See Fed.R.Civ.P. 43(e); *Stewart v. RCA Corp.*, 790 F.2d 624, 628–29 (7th Cir.1986) (dictum). But the upshot must be a decision by the district court on jurisdiction—not a decision that there is or is not enough evidence to have a trial on the question.

██ Maybe in some cases the jurisdictional issue will be so bound up with the merits that a full trial on the merits may be necessary to resolve the issue. The Ninth Circuit thought that *Augustine v. United States*, 704 F.2d 1074, 1077–78 (9th Cir. 1983), was such a case. More commonly, in a case such as the present where there is no right to jury trial the judge may, if the jurisdictional issue requires for its sound disposition pretrial discovery and a full oral hearing, make that hearing the first stage of the trial. But to proceed thus is discretionary rather than mandatory. Since the question of Crawford's mental capacity was unrelated to the most important issue on the merits, which is whether the Postal Service was negligent in removing the mailbox in the manner that it did, it was entirely proper to decide the jurisdictional issue in advance of trial.

██ The government's only evidence was documentary, but it persuaded the district judge that there was no genuine issue of material fact regarding Crawford's mental capacity. We must decide whether the evidence was sufficient in the circumstances to show that the district court lacked jurisdiction of the lawsuit because of its untimeliness. The burden of establishing that he was within an exception to the statute of limitations was on Crawford, see *Drazan v. United States, supra*, 762 F.2d at 60, and what he had to prove was that, given his incapacity, he did not know and could not by reasonable diligence have discovered that the cause of his accident was an act by the Postal Service. See *id.* at 58–59; *United States v. Kubrick, supra*. Of course if the judge was right that there wasn't even enough indication of incapacity to create a triable issue, even more clearly did Crawford fail to prove his incapacity and thus to carry his burden of proving that the district court had jurisdiction.

██ Apart from the fact that Crawford was employed at the time of the accident, did not then and does not now have a guardian or conservator, and signed both the administrative claim belatedly filed with the Postal Service and the complaint in this lawsuit, the report of his personal doctor made the day after the accident provides some evidence of his capacity. It states:

> PROBLEM—MULTIPLE CONTUSIONS & STURGE–WEBER SYNDROME ... Since th[e] time [of the emergency room visit the previous day], he [Crawford] denies any visual manifestations, seizures. He has had some mild headache which was relieved by Tylenol.... Neurological exam entirely normal. In general. [sic] he has been doing quite well since his previous visit in Oct. ... He continues to function well at work. He has managed to decrease his meds so as to be less drowsy than previosly [sic]. He is advised to continue his same meds as before. A discussion regarding his status was made with the stepfather who is present in the office and also a phone call was made to patient's mother to discuss his general status and specifically his E.R. [emergency room] trauma.

The picture conveyed is of a person who although mentally retarded is capable of communicating with the doctor (Crawford

"denies any visual manifestations, seizures" since the visit to the hospital the previous day following the accident) and of understanding and following medical advice ("He is advised to continue his same meds as before"). Of course, Crawford may actually have been incapable of understanding or inquiring into the cause of the accident; for all we know, he said nothing in response to the doctor's questions and the doctor merely construed his silence as denial. But this possibility is sufficiently conjectural in light of the report and the other evidence we have mentioned to require that Crawford have submitted additional evidence. The fact that his mother signed the emergency-room report describing his accident does not show that he could not understand the cause of the accident; his mother may have signed the report simply because her son was injured and she was not.

Crawford's counsel did not argue to the judge that oral testimony was necessary to resolve the issue of Crawford's mental capacity; nor did counsel obtain an affidavit from the doctor or from anyone else who might have been able to cast further light on the severity of Crawford's retardation. In these circumstances the judge was entitled to conclude that there was no triable issue regarding Crawford's capacity to file a timely administrative complaint; and although this was the wrong way to approach a jurisdictional issue, it had the same practical effect as a finding of no jurisdiction. The procedure was summary, but as we said before there is no set form for determining a contested issue of jurisdiction. A summary proceeding without oral testimony is fine if reasonable in the circumstances, and it was reasonable here if only because Crawford did not ask for an oral hearing or submit counteraffidavits to the government's.

Among the facts that Crawford's lawyer could easily have put into the record if it would have helped his cause to do so was Crawford's IQ. The medical literature on Sturge-Weber Syndrome indicates that not all people who suffer from it are mentally retarded and that among those who are the degree of mental retardation varies. See Nellhaus, Stumpf & Moe, Current Pediatric Diagnosis and Treatment 592 (7th ed. 1982); Gwinn & Lee, *Radiological Case of the Month: Sturge-Weber Syndrome*, 130 Am.J.Dis.Child. 859, 860 (1976); Crosley & Binet, *Sturge-Weber Syndrome*, 17 Clin. Pediatrics 606 (1978). Evidently the mental consequences of Sturge-Weber Syndrome describe a continuum one end of which is normal, and Crawford made no attempt to show where he is on the continuum.

AFFIRMED.