**Stephen BARNHART, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. IP 88–274–C.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

Nov. 28, 1988.

---

Raymond F. Fairchild, Indianapolis, Ind., for plaintiff.

Harold R. Bickham, Asst. U.S. Atty., Office of the U.S. Atty., Indianapolis, Ind., for defendant.

## ENTRY

BARKER, District Judge.

This matter is before the court on a motion for summary judgment filed by the defendant, United States of America, on July 20, 1988. The plaintiff, Stephen Barnhart, responded on August 8, 1988, to which the government replied on August 17, 1988. A hearing on the motion for summary judgment was held on November 7, 1988. For the reasons set forth below, the defendant's motion is GRANTED.

*Background*

The plaintiff, Stephen Barnhart, who was born on March 15, 1949, served in the United States Army from September 1967 through March 1968. Near the end of his military service, Barnhart suffered a psychotic episode and was diagnosed as schizo-phrenic by Veterans Administration ("VA") hospital personnel. Over the next twelve years, with only occasional breaks, Barnhart was treated for his condition with large doses of anti-psychotic medication prescribed at various VA facilities. Although most of Barnhart's hospitalization occurred at a San Diego, California, VA hospital, he also received treatment at Louisville and Lexington, Kentucky. The medication taken by Barnhart in accordance with doctors' instructions consisted primarily of Thorazine, but also included other neuroleptic drugs such as Mellaril, Prolexin, Haldol, Taractin and Stellazine. Administered to Barnhart in doses reaching 400 to 800 miligrams a day, the medication was used to control his psychotic behavior. Unfortunately, as a result of being given large doses of tranquilizers over long periods of time, Barnhart developed an affliction known as tardive dyskinesia.

Tardive dyskinesia, identified and documented as such since approximately 1973, is an irreversible neurological disorder induced by ingestion of major tranquilizers for extended periods of time. The disease may reverse itself if drug therapy is immediately terminated upon the onset of its symptoms. If drug therapy is discontinued and the symptoms persist, the symptoms will become permanent. They include a slight quivering of the tongue, loss of voluntary musculature, including the muscles of the face, head, neck, limbs, hands, feet and torso. Respiration and swallowing also may be affected. The disease may also cause abnormal spasms, tics, contortions and bizarre slow, writhing movements. Although the symptoms range in severity, the disease can become totally disabling and is very disfiguring, even in mild forms.

In an affidavit, Dr. Peter Breggin, a psychiatrist, testified that he examined the plaintiff on March 1, 1986, reviewed patient records, and talked with the plaintiff and his mother in numerous telephone conversations. He noted that the plaintiff exhibited symptoms of mental deterioration typical of organic brain disease associated with tardive dyskinesia. Dr. Breggin observed the following symptoms in plaintiff: diffi-

culty concentrating and focusing attention; difficulty planning ahead and anticipating the future or handling complex decision-making; short term memory impairment and retrograde amnesia; and emotional instability, especially increased irritability. Breggin further opined that these symptoms have severely impaired the plaintiff and rendered him unable to exercise control over his own legal interests since the diagnosis of tardive dyskinesia. With regard to the plaintiff's underlying schizophrenia, Dr. Breggin stated that the plaintiff's schizophrenia is "in remission," meaning that the more severe manifestations of the disease are no longer present. However, some of the plaintiff's schizophrenic symptoms have remained, including paranoia, irrational fear of the VA, and extreme personal helplessness with a passive-dependent character.

Currently, Barnhart is rated by the VA as having a 100% service-related disability, consisting of schizophrenia and tardive dyskinesia. He receives disability payments for his support and the support of his mother, with whom he lives. Barnhart is considered competent by the VA.

It is undisputed that neither the plaintiff nor his mother, with whom he resided, were initially advised that the plaintiff was suffering from tardive dyskinesia. It was not until the plaintiff was examined by Dr. Charles Rehn in a neurological consultation that the condition became known. Dr. Rehn, in a letter written on July 13, 1983, stated that he had seen the plaintiff and concluded that "[h]e has severe tardive dyskinesia from major tranquilizer treatment for schizophrenia in the past." In the letter, Dr. Rehn related that he discussed at length the plaintiff's case with the plaintiff's attorney. The letter also indicates that a copy was sent to plaintiff's attorney.

On March 22, 1985, the plaintiff filed an action in federal district court against Smithkline Beckman Corporation ("Smithkline Beckman"), a manufacturer and seller of the drug Thorazine. In that action, plaintiff alleged that he developed tardive dyskinesia and other conditions as a direct result of taking the Thorazine manufac-

tured and sold by Smithkline Beckman. The action was subsequently settled.

On February 2, 1987, the plaintiff filed an administrative tort claim with the VA. In his claim, the plaintiff alleged that the VA's negligent medical care resulted in the development of tardive dyskinesia. On January 19, 1988, the VA denied the claim on the grounds that it had been untimely filed.

The plaintiff then filed, on March 8, 1988, the complaint in this action against the defendant United States. He alleges that he developed tardive dyskinesia as a result of the VA's negligent medical care. The government has responded with its motion to dismiss, maintaining that the plaintiff's action is barred because the plaintiff's administrative tort claim, which is the prerequisite to his judicial action, was not filed in a timely manner.

*Discussion*

The court notes at the outset that the government has requested to transform what is captioned its motion for summary judgment into a motion to dismiss for lack of subject matter jurisdiction. Fed.R. Civ.P. 12(b)(1). The court accedes to the government's request to treat the motion as a motion to dismiss, agreeing that the statute of limitations under the Federal Tort Claims Act is a jurisdictional issue which must be resolved before proceeding to trial. *Crawford v. United States*, 796 F.2d 924, 927–28 (7th Cir.1986). Accordingly, the court now turns to the issue to be resolved and a determination of the motion to dismiss.

It is well-established that the United States enjoys immunity from suit unless it specifically consents to be sued. *United States v. Kubrick*, 444 U.S. 111, 117–18, 100 S.Ct. 352, 357, 62 L.Ed.2d 259 (1979); *Soriano v. United States*, 352 U.S. 270, 276, 77 S.Ct. 269, 273, 1 L.Ed.2d 306 (1957). Congress may, if it deems appropriate, impose certain limitations and conditions on its waiver of sovereign immunity. *United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 953–54, 47 L.Ed.2d 114 (1976).

The Federal Tort Claims Act constitutes such a waiver of immunity by creating a

right to recovery from the United States for the tortious conduct of its agents. However, this waiver is not without limitations and conditions. Specifically, the Act provides that, as a condition precedent to filing an action against the government, the claimant must first present his claim to the appropriate federal agency for administrative review and resolution, if possible. 28 U.S.C. § 2675. Congress also imposed the following temporal limitation: "A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate federal agency within two years after such claim accrues." 28 U.S.C. § 2401(b). In the case at bar, the government challenges the plaintiff's entitlement to sue the United States, charging that his claim was filed after two years from the time the claim accrued and thus is barred by section 2401(b).

In determining whether the plaintiff's claim is, indeed, precluded, the court notes that because the Act is founded upon a waiver of sovereign immunity, the court must strictly construe the limitations provision. *Soriano*, 352 U.S. at 276, 77 S.Ct. at 273, 1 L.Ed.2d 306. The court is not free to extend the period of the waiver beyond that which Congress adopted. *Kubrick*, 444 U.S. at 117–18, 100 S.Ct. at 357, 62 L.Ed.2d 259.

In *Kubrick*, 444 U.S. at 121, 100 S.Ct. at 358, 62 L.Ed.2d 259, the United States Supreme Court construed the limitations period and determined that an action under the Act does not accrue until the plaintiff discovers or should have discovered, in the exercise of reasonable diligence, the injury and its cause. This approach is referred to as the "discovery rule" and the court is bound to apply this interpretation of the statute to the plaintiff's claim.

The plaintiff does not contend that the discovery rule is inapplicable to his claim. Rather, he urges the court to recognize an exception to the rule that allows for equitable tolling of the limitations period. The court now turns to plaintiff's contention that the theory of equitable tolling is applicable to his claim.

Generally, the grounds for tolling federal statutes of limitations are more limited in suits against the government than in suits between private litigants. *Swietlik v. United States*, 779 F.2d 1306, 1311 (7th Cir.1985). Cognizant of the need to strictly interpret the limitations and conditions upon which the government consents to be sued, courts have rarely allowed statutes of limitations to be equitably tolled. *Crawford v. United States*, 796 F.2d 924, 926 (7th Cir.1986). For example, courts have refused to toll statutes of limitations when a plaintiff had a guardian or conservator to conduct his legal affairs, or was prevented from filing suit by war or infancy. *See, e.g., Soriano*, 352 U.S. 270, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957) (war); *Jastremski v. United States*, 737 F.2d 666, 669 (7th Cir. 1984) (infancy).

The statute of limitations contained in the Federal Tort Claims Act provides that a civil action must be filed within six years after the claim accrues. 28 U.S.C. § 2401(a). Section 2401(a) also includes an express tolling provision which grants "any person under legal disability" at the time his claim accrues three years in which to file suit after the disability ends. *Id.* Section 2401(b), which provides a two year limitation for filing an administrative claim, omits any reference to legal disabilities as a basis for tolling the limitations period. This omission has led some courts to conclude that section 2401(b) cannot be tolled by a legal disability such as insanity. *See, e.g., Casias v. United States*, 532 F.2d 1339, 1342 (10th Cir.1976) (and cases cited therein).

The Seventh Circuit has not decided this question, but noted in *Crawford*, 796 F.2d 924, that at most the law is not clear as to whether the administrative statute of limitations may be tolled by a legal incapacity. 796 F.2d at 926. The court stated, "[A]s far as we know there is no such thing as being legally incapable of filing an administrative claim; so maybe the omission of any reference to legal disability in subsection (b) should not be taken to foreclose an appeal to some notion of or akin to equitable tolling." *Id.* On the basis only of this judicial aside in *Crawford*, this court

does not feel confident ruling on the effect of the discrepancy between sections 2401(a) and (b), particularly when such a determination is unnecessary to a resolution of the instant dispute. Even if the court were to conclude that section 2401(b) gave rise to a theory of equitable tolling, application of that theory in this case would be inappropriate for the reasons discussed below.

The determination of whether a statute should be tolled depends on an analysis of the particular circumstances of each case. Although there exists no absolute rule of tolling on insanity grounds, courts have generally held that a disability due to mental incompetency does not toll the running of a federal statute of limitations such as section 2401(b). *See Casias*, 532 F.2d at 1342. Under section 2401(b), the cases that recognize equitable tolling for certain mental disabilities rely on the "discovery" rule. Those cases making an exception to the rule against tolling hold that when the claimant's mental condition is allegedly caused by the defendant's tortious conduct and directly prevents him from discovering the nature and cause of his injury, the statute of limitations is tolled. *See Washington v. United States*, 769 F.2d 1436, 1438–39 (9th Cir.1985); *Clifford v. United States*, 738 F.2d 977 (8th Cir.1984); *Zeidler v. United States*, 601 F.2d 527, 531 (10th Cir.1979); *Dundon v. United States*, 559 F.Supp. 469 (E.D.N.Y.1983). In each of the cases cited, the brain damage or destruction caused by the defendant prevented the plaintiff from discovering his or her injury; thus, the statute was tolled until the injury was discovered by the claimant himself or by an individual assuming a legal duty to act for the claimant. *See Clifford*, 738 F.2d at 980 (statute began running when guardian was appointed for comatose patient); *Zeidler*, 601 F.2d at 531 (statute was tolled by the plaintiff's inability to discover malpractice due to lobotomy operations performed by the government); *Washington*, 769 F.2d at 1439 (comatose patient's claim accrued at her death); *Dundon*, 559 F.Supp. at 475 (statute tolled during the period in which the patient lay comatose).

In this case, the plaintiff argues that the tardive dyskinesia rendered him mentally incompetent. He asserts that the VA was responsible for his incompetence because VA personnel administered the offending tranquilizers to plaintiff. He contends that this incompetence contributed, at the very least, to his irrational fear of proceeding against the VA. The plaintiff further maintains that his incompetence deprived him of the ability to consent to the filing of a claim until February 1987. Therefore, plaintiff argues, the tolling exception is applicable.

Although the plaintiff's plight is truly regrettable, it cannot survive the statute of limitations bar on the theory of equitable tolling, even within the exception carved out by other circuits. Unlike the cases recognizing the exception to the discovery rule, the facts in this case reveal a different type of mental disability. Here, the plaintiff suffered from a form of mental illness associated with the condition the plaintiff alleges was caused by the defendant's malpractice, rather than from a type of brain destruction or incompetency which results in a comatose condition or in a complete failure to comprehend anything. In contrast to a comatose or other nonfunctional patient, the plaintiff was functional, albeit at a reduced level, was cognizant and able to exercise certain of his legal rights, as evidenced by his pursuit of the companion litigation against the manufacturer of the medication. Accepting plaintiff's claim that his mental illness may have interfered with his ability to make rational decisions, it did not render him totally incompetent.

The facts further reveal that, though there was some evidence of prior diagnosis of plaintiff's condition, it was specifically disclosed on March 17, 1983, by Dr. Charles Rehn, a neurologist who had examined the plaintiff, and in a letter to plaintiff's attorney and his treating physician, dated July 13, 1983, stated that the plaintiff "has a severe tardive dyskinesia from major tranquilizer treatment for schizophrenia in the past." (The plaintiff's attorney received a copy of Dr. Rehn's opinion.) The plaintiff was also told in 1983 that his condition was

caused by prolonged ingestion of tranquilizers.

The court finds that this notice constituted a discovery sufficient to trigger the running of the limitations period. That the discovery was then followed by a period of mental illness associated with the condition the plaintiff alleges was caused by defendant's malpractice does not establish that the plaintiff was incompetent to discover his injury. Instead, the plaintiff's failure to file a claim within the limitations period resulted not from his failure to discover his injury but from his refusal to pursue his claim.

It is immaterial to the ruling in this case that the plaintiff's refusal to file a claim against the VA stemmed from his fear of offending the agency, upon whom he felt totally dependent. Plaintiff's fears were explained on the basis of his psychiatric disorder as well as his actual experiences with the VA. Although the court recognizes that plaintiff's paranoia may have contributed to his refusal of authority to his attorney to bring a legal action, it did not prevent his discovery of the nature and cause of his injury. This is the only test which controls a determination of when the action accrued, and it is the only test for obvious reasons. One could readily foresee that a tort could be discovered but go unpursued for a multitude of good, persuasive reasons and could continue unpursued for indefinite periods of time, which, if allowed to extend the filing period would swallow the entire purpose and effect of the limitations on the waiver of sovereign immunity.

The plaintiff's refusal in this case to file his claim due to mental illness simply cannot be equated with a failure to discover the injury based on mental incompetency or destruction of brain functions. Because the equitable tolling exception to the discovery rule recognizes only the latter situation, it does not apply to these facts and thus does not afford a basis for resisting the motion to dismiss.

Thus, despite the distressing circumstances in which plaintiff finds himself because of his afflictions, the court is compelled to hold that the plaintiff's claim accrued when he discovered the cause of his injury in 1983. Under section 2401(b), the plaintiff should have filed his claim with the VA by July 13, 1985, two years from the date of Dr. Rehn's letter or receipt of same by plaintiff's attorney. The plaintiff did not file his claim with the VA until February 1987, a date clearly beyond the two year limitations period. The plaintiff is, therefore, barred from seeking redress against the defendant under the Federal Tort Claims Act.

This court pauses to observe with some regret the apparent harshness of its ruling in light of plaintiff's sad circumstances. The court is bound, however, by the principles of law, including the rule of sovereign immunity which requires strict construction and rigid application. If the court were to interpret the statute so to find an exception allowing otherwise untimely claims of a plaintiff who has no legal guardian and who is mentally ill but legally competent, simply because of those circumstances, such claims could be potentially actionable indefinitely. Such a result would foreclose any possibility of repose for the government, clearly in contradiction of the statutes which govern these issues. It is impossible in this court's view to conceive that Congress would reasonably have intended such a result when it originally enacted so limited a waiver of sovereign immunity. The defendant's motion to dismiss is, therefore, GRANTED.

*Conclusion*

The court finds that the plaintiff's claim under the Federal Tort Claims Act is barred by the two year administrative statute of limitations provided in section 2401(b). The court GRANTS the defendant's motion to dismiss pursuant to Rule 12(b)(1), Fed.R.Civ.P.

It is so ORDERED.