**C.R.S., et al., Plaintiffs,**

v.

**UNITED STATES of America,
Defendant.**

**Civ. No. 4–90–299.**

United States District Court,
D. Minnesota,
Fourth Division.

April 19, 1991.

James T. Martin and Patrick M. Conlin, Gislason, Martin & Varpness, P.A., Edina, Minn., for plaintiffs.

Philip H. Lynch, Special Atty., Torts Branch, Civil Div., U.S. Dept. of Justice, and Brendan F. Flanagan, Torts Branch, Litigation Div., Office of The Judge Advocate General, Dept. of the Army, Washington, D.C., for defendant.

## AMENDED ORDER

DOTY, District Judge.

## INTRODUCTION

This matter is before the court on defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) or, in the alternative, for summary judgment under Rule 56(c). After a review of the file, record and proceedings, the court denies both motions.

## FACTS

Plaintiffs D.B.S., C.R.S. and N.A.S. bring this action against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–2680, under 42 U.S.C. § 1985(3) and under the Constitution of the United States. Because this matter is before the court as a result of defendant's motions for summary judgment or for dismissal, the facts are taken as alleged by the plaintiffs.

The facts underlying this lawsuit set out a tragic series of events. Plaintiff D.B.S. volunteered to join the Minnesota National Guard in December 1982, and was sent to Ft. Benning, Georgia for basic training beginning in July 1983. On August 14, 1983, while on active duty at Ft. Benning, D.B.S. had surgery for abdominal bleeding caused by diverticulitis at the Martin Army Community Hospital. During surgery, D.B.S. received at least nine units of blood through transfusions. D.B.S. satisfactorily recovered from the surgery and completed his tour of duty. He received an honorable discharge from the Minnesota National Guard on December 6, 1988.

D.B.S. married plaintiff N.A.S. on November 2, 1984. D.B.S. and N.A.S. have three children, the youngest of whom, plaintiff C.R.S., was born on June 29, 1987. C.R.S. soon developed various health problems and it became apparent that she was not developing normally. On February 10, 1989, a blood test revealed that C.R.S. tested positively for HIV, indicating the presence of the Acquired Immune Deficiency Syndrome (AIDS) virus. Tests conducted on February 22, 1989, indicated that both D.B.S. and N.A.S. also tested positively.

Plaintiffs allege that the blood transfusion given to D.B.S. at Martin Army Community Hospital on August 14, 1983, is the source of the AIDS virus now affecting all three plaintiffs. Based on an incubation period for the AIDS virus of up to five to ten years, plaintiffs believe that D.B.S. spread the AIDS virus to his wife, N.A.S., through sexual contact and N.A.S. then likely spread the virus to her daughter, either in utero or through breast feeding. Plaintiffs began this suit against the United States on April 23, 1990, alleging medical malpractice, lack of informed consent, breach of express and implied warranties, assault and battery and violation of various constitutional and civil rights.

## DISCUSSION

The motions brought by defendant United States will be considered under the summary judgment standard even though the government's principal arguments are for dismissal under Federal Rule of Civil Procedure 12(b)(1). Usually, a motion for dismissal under Rule 12(b)(1) is not convertible to a summary judgment motion and reviewed under the Rule 56 standard, as is a motion under Rule 12(b)(6). *Osborn v. United States*, 918 F.2d 724, 729 (8th Cir.1990). That is because Rule 12(b)(1) "[j]urisdictional issues, whether they involve questions of law or of fact, are for the courts to decide." *Id.* In contrast, under a summary judgment motion the court is only deciding whether a trial to ultimately decide a matter can be avoided. For this reason, a decision by the court as to whether it has jurisdiction usually requires an evidentiary hearing on the issue. *Id.* at 730. However, there is an exception to the requirement for an evidentiary hearing "when the jurisdictional issue is 'so bound up with the merits that a full trial on the merits may be necessary to resolve the issue.'" *Id.* (citing *Crawford v. United States*, 796 F.2d 924, 928 (7th Cir.1986)); *see also* 5A C. Wright & A. Miller § 1350, at 235 (1990). In such a case, where the jurisdictional issue is dependent upon the resolution of factual issues going to the merits, a court applies the summary judg-

ment standard. *Augustine v. United States*, 704 F.2d 1074, 1079 (9th Cir.1983).

Here, an ultimate determination of the jurisdictional issue depends on the facts developed as to the merits of plaintiffs' claims. As a result, a summary judgment standard is appropriate despite the fact that the government's motion is principally based on a Rule 12(b)(1) defense.

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." This standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Stated in the negative, summary judgment will not lie if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510. In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c). A fact is material only when its resolution affects the outcome of the case. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. *Id.* at 250, 106 S.Ct. at 2511. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. *Id.* at 322–23, 106 S.Ct. at 2552–53. With this standard at hand, the court will consider the motions for partial summary judgment.

■ The government argues that the claims of all three plaintiffs are barred by the *Feres* doctrine. *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950). Under the *Feres* doctrine, "the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to military service." *Id.* at 146, 71 S.Ct. at 159. In 1946 Congress decided to waive the federal government's sovereign immunity for common law torts with some limited exceptions and enacted the Federal Tort Claims Act (FTCA). *See* 28 U.S.C. §§ 1346(b), 2671–2680 (1990). Even though torts related to military service were not among the enumerated exceptions to the FTCA, the Supreme Court, in *Feres*, concluded that Congress could not have intended to expose the government to such suits.

The *Feres* doctrine rests on three rationales. *United States v. Johnson*, 481 U.S. 681, 684 n. 2, 107 S.Ct. 2063, 2065 n. 2, 95 L.Ed.2d 648 (1987). First, a uniform federal law regarding suits arising from military service is needed owing to the "distinctively federal" relationship between the government and its military personnel. *Feres*, 340 U.S. at 142–144, 71 S.Ct. at 157–158. Underlying this rationale is the presumption that Congress would not have intended that suits against the military would subject the government to different results based on differing state tort laws. *Johnson*, 481 U.S. at 689, 107 S.Ct. at 2068. Second, the *Feres* doctrine prohibits suits for service-related injuries because such injuries are presumed compensated by "generous statutory disability and death benefits" provided by the Veterans' Benefits Act, 38 U.S.C. § 301 *et seq. Id.* This rationale is similar to that behind state laws barring personal injury suits for injuries compensated under workers' compensation statutes. Third, the *Feres* doctrine prohibits suits against the government for

service-related injuries because of the concern that permitting such suits would "involve the judiciary in sensitive military affairs at the expense of military discipline and effectiveness." *Id.* at 690, 107 S.Ct. at 2068 (quoting *United States v. Shearer*, 473 U.S. 52, 59, 105 S.Ct. 3039, 3043, 87 L.Ed.2d 38 (1985)).

As the *Feres* doctrine evolved over several decades, courts increasingly focused on this third rationale, "military discipline," in determining whether the *Feres* doctrine should bar tort claims. *See, e.g., Shearer*, 473 U.S. at 57–58, 105 S.Ct. at 3042–3043; *Brown v. United States*, 739 F.2d 362, 368–369 (8th Cir.1984). Interestingly, the military discipline rationale did not underlie the decision in *Feres* itself; rather, it arose four years later in *United States v. Brown*, 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954). More recently, however, the Supreme Court emphasized that all three rationales are to be taken into account to determine whether *Feres* applies. *See Johnson*, 481 U.S. at 686–692, 107 S.Ct. at 2066–2070; *see also Del Rio v. United States*, 833 F.2d 282, 287 n. 8 (11th Cir. 1987) ("*Johnson* requires this court to consider all of the policies underlying the *Feres* doctrine").

The rationales of the *Feres* doctrine fail to support its application to plaintiff D.B.S. and his family members, N.A.S. and C.R.S. Neither of the first two rationales, the "distinctively federal" relationship and the existence of veterans' benefits, applies because plaintiff D.B.S. has been denied benefits by the Veterans Administration. Affidavit of Patrick M. Conlin with attached letter from Department of Veterans Affairs. The government's concern with the "distinctively federal" relationship cannot be given weight in the absence of veterans' benefits. The uniformity that the *Feres* Court sought to provide (by prohibiting the application through the FTCA of various state tort laws) was to be established through the "generous statutory disability and death benefits," *Johnson*, 481 U.S. at 689, 107 S.Ct. at 2068, of the Veterans Benefits Act. Accordingly, when the government has failed to provide veterans' benefits there is no reason to assume that

Congress wanted to accomplish that uniformity by providing *no* recovery for an injured veteran. In short, the notion underlying the *Feres* doctrine seems to be that in exchange for prohibiting private suits the government provides the Veterans Benefit Act "as a substitute for tort liability, a statutory scheme providing pensions for injured servicemen without regard to any negligence on the part of the government." *Brown v. United States*, 739 F.2d 362, 365 (8th Cir.1984); *see also Del Rio*, 833 F.2d at 287 (suggesting that the government must show entitlement to statutory benefits before *Feres* immunity applies).

Plaintiffs' claims, in contrast to those reviewed by the Supreme Court in *Johnson*, have very little "potential ... [to] implicate military discipline". *Johnson*, 481 U.S. at 692, 107 S.Ct. at 2069. The government fails to demonstrate how permitting this claim to go forward would imperil decisions about national security and the military mission. Allowing a suit by a former member of the military for acts unrelated to the military mission does not, on these facts, threaten the integrity of military decision making. Furthermore, *some* inquiry into military activities and decision making is not a sufficient rationale for barring all suits. The same, or even greater, level of inquiry may result when a civilian sues the government for conduct related to military activities. *See Peterson v. United States*, 673 F.2d 237 (8th Cir. 1982). Finally, these claims do not present the threat of a soldier haling his superior into court. *See Brown*, 348 U.S. at 112, 75 S.Ct. at 143. Because they fail to invoke the three rationales supporting the *Feres* doctrine, plaintiffs' claims are not barred. As a result, under the FTCA plaintiffs may sue the United States government under any available state causes of action. 28 U.S.C. § 1346(b); *see also Valn v. United States*, 708 F.2d 116, 119 n. 3 (3d Cir.1983).

The Eighth Circuit in *Bowers v. United States*, 904 F.2d 450 (8th Cir.1990), affirmed the dismissal of a claim for medical malpractice based on military physicians' alleged failure to detect cancer during a

routine pre-induction physical. *Id.* at 451. Judge Arnold, for the Circuit's panel, reached that result with "some difficulty" and suggested that applying the *Feres* doctrine to bar Bowers' claim stretched the doctrine to its limits. *Id.* In explanation of its holding the court concluded, however, that "there is no question that pre-induction physicals are activities incident to service, and that two out of the three bases for the *Feres* doctrine" applied to Bowers' claims. *Id.* at 452. In the present case, it is highly questionable that elective surgery wholly unrelated to a serviceman's military duties is "incident to service", and as previously noted, only one of the three bases for the *Feres* doctrine arguably applies to D.B. S.'s claim. Thus, the present case is distinguishable from *Bowers* and the *Feres* doctrine does not bar D.B.S.'s claim.[1]

■ Even if the *Feres* doctrine would apply to bar the claims of D.B.S. arising during his period of military service, it would not apply to any claims that may have arisen under state law after his discharge. The Supreme Court made clear in *Brown* that the *Feres* doctrine does not bar tort suits for injuries after discharge from the military even if there is an arguable relationship between the injury and the plaintiff's prior military service. In *Brown*, the Court affirmed a veteran's recovery under the FTCA for negligence at a veterans hospital despite the fact that the veteran's access to that hospital was, presumably, "incident to service." *Brown*, 348 U.S. at 112–114, 75 S.Ct. at 143–144. Indeed, at least one court has held that recovery for post-discharge injuries is *compelled* by *Brown*. *Thornwell v. United States*, 471 F.Supp. 344 (D.D.C.1979); *see also Valn*, 708 F.2d 116 (3d Cir.1983); *Rogers v. United States*, 902 F.2d 1268, 1273–74 (7th Cir.1990). The Eighth Circuit has noted that the *Feres* doctrine "does not preclude an action based upon a truly independent, post-service tort." *Laswell v. Brown*, 683 F.2d 261, 267 n. 10 (8th Cir. 1982).

■ The separate claims of plaintiffs N.A.S. and C.R.S. may still go forward. Courts have recognized the inapplicability of the *Feres* doctrine to claims brought by civilian family members. *Del Rio*, 833 F.2d 282; *Utley v. United States*, 624 F.Supp. 641 (S.D.Ind.1985).

The United States asserts that the claims of N.A.S. and C.R.S. are barred by the "genesis" rule, which extends the *Feres* doctrine to claims by dependents of service members that originate with an injury to the service member. The Eighth Circuit has never adopted the genesis rule. In *Laswell*, cited by the government, the Eighth Circuit did not dismiss the dependents' claims relying on the genesis rule, but rather because the "complaint [was] con-

**1.** Numerous commentators have criticized the *Feres* doctrine. *See, e.g.,* Schwartz, *Making Intramilitary Tort Law More Civil: A Proposed Reform of the Feres Doctrine,* 95 Yale L.J. 992–1016 (1986); Bennett, *The Feres Doctrine, Discipline and the Weapons of War,* 29 St. Louis U.L.J. 383, 407–11 (1985); Myers, *The Feres Doctrine: Has It Created Remediless Wrongs for Relatives of Servicemen?* 44 U.Pitt.L.Rev. 929–953 (1983); Note, *From Feres to Stencel: Should Military Personnel Have Access to FTCA Recovery?* 77 Mich.L.Rev. 1099, 1106–08 (1979). Moreover, four justices of the United States Supreme Court indicated that they would have considered overruling the doctrine if it had been requested in *United States v. Johnson,* 481 U.S. 681, 107 S.Ct. 2063, 95 L.Ed.2d 648 (1987). Writing on behalf of the four justices, Justice Scalia stated:

> neither the three original *Feres* reasons nor the *post hoc* rationalization of "military discipline" justifies our failure to apply the FTCA as written. *Feres* was wrongly decided and

heartily deserves the "widespread, almost universal criticism" it has received.

*Id.* at 700, 107 S.Ct. at 2074 (dissent) (citation omitted). Justice Scalia strongly criticized the "military discipline" rationale on which the *Johnson* majority relied:

> I do not think the effect upon military discipline is so certain, or so certainly substantial, that we are justified in holding (if we can ever be justified in holding) that Congress did not mean what it plainly said in the statute before us.
>
> It is strange that Congress' "obvious" intention to preclude *Feres* suits because of their effect on military discipline was discerned neither by the *Feres* Court nor by the Congress that enacted the FTCA (which felt it necessary expressly to exclude recovery for combat injuries). Perhaps Congress recognized that the likely effect of *Feres* suits upon military discipline is not as clear as we have assumed, but in fact has long been disputed.

*Id.* at 699, 107 S.Ct. at 2073–74.

spicuously void of any allegation that the children have sustained any damage other than the exposure to a higher *risk* of disease...." *Laswell*, 683 F.2d at 269 (emphasis in original). Moreover, the policy rationales of the *Feres* doctrine, as discussed above, are even less appropriate for use in barring the claims of N.A.S. and C.R.S. *See Del Rio*, 833 F.2d at 287–88. As a result, the separate claims of N.A.S. and C.R.S. are not prohibited by the *Feres* doctrine.

Based on the foregoing, IT IS HEREBY ORDERED that: Defendant's motion for dismissal pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, or in the alternative, motion for summary judgment pursuant to Rule 56(c) is denied.