**Gregory THOMPSON, etc., Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

**No. 86 C 1416.**

United States District Court, N.D. Illinois, E.D.

Aug. 12, 1986.

Gerald M. Sachs & Associates, Richard J. Aronson, Chicago, Ill., for plaintiff.

Anton Valukas, U.S. Atty., Linda Wawzenski, Asst. U.S. Atty., Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Gregory Thompson ("Gregory") sues the United States[1] under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b) ("Section 1346(b)") and 2674 ("Section 2674"), claiming:

1. $2.5 million for Toni's wrongful death (Count I);

2. $5,000 for funeral bills and expenses on Toni's behalf (Count II);

3. as administrator of the estate of Toni Thompson ("Toni").

---

1. Gregory sues in three capacities:
   1. individually;
   2. as guardian of his three minor children ("Children"); and

3. $2.5 million in a survival action for Toni's pain and suffering (Count III); and

4. $750,000 for Gregory's loss of consortium (Count IV).

At the threshold the United States has moved to dismiss for lack of subject-matter jurisdiction. For the reasons stated in this memorandum opinion and order, the motion is denied.

### Facts [2]

In 1983, while Gregory was a member of the United States Army, his wife Toni was admitted to the Tripler Army Medical Center ("Tripler") in Hawaii (¶¶ 1, 4; Gregory Aff. ¶ 2). Doctors and nurses there told Gregory Toni was suffering from lupus[3] (Gregory Aff. ¶ 2). Toni died at Tripler November 26, 1983 (¶ 8; Gregory Aff. ¶ 2). Gregory Aff. ¶ 2 says the Tripler staff told him lupus was the sole cause of Toni's death.

During December 1983 Gregory (Aff. ¶ 4):

read some materials about lupus and wondered whether the examination, diagnosis and treatment of his wife had met proper medical standards.

That same month Gregory spoke to an attorney, who agreed to look into the matter (*id.* ¶ 5). In April 1984 Tripler told Gregory Toni's autopsy report had just been completed (*id.* ¶ 6). He wrote immediately for the complete medical records but did not receive them until August 24, 1984 (*id.* ¶ 7).

On November 29, 1984 Gregory submitted an administrative claim to the Army (the "First Claim") (¶ 10). "[I]ndividually and as parent of" Children, he sought $3 million for Toni's wrongful death (see Complaint Ex. [2],[4] the claim form). Gregory had been appointed Children's guardian November 7, 1984.[5]

On December 20, 1985 Gregory was appointed administrator of Toni's estate by the Circuit Court of Cook County, Illinois (see Complaint Exs. [4], [5]). On the same day he submitted an amended claim, seeking an additional $3 million for "personal injury" (the "Second Claim") (Complaint Ex. [3]).

On February 5, 1986 the Army denied both the First and Second claims (¶ 13). Gregory filed this action February 23, 1986.

### Timeliness: Wrongful Death Claim

██ Every FTCA claim must be presented to the appropriate federal agency "within two years after such claim accrues" (28 U.S.C. § 2401(b), "Section 2401(b)"). That two-year period is jurisdictional (*Crawford,* 796 F.2d at 927). Gregory's First Claim was filed just over a year after Toni's death and was thus prima facie timely.

Despite that the United States argues the First Claim was inadequate, for Gregory had not yet been appointed administrator of Toni's estate. To that end the United States relies on 28 C.F.R. § 14.3(c):

A claim based on death may be presented by the executor or administrator of the decedent's estate, or by any other person entitled to assert such a claim in accordance with applicable State law.

---

**2.** Many of the principal facts are undisputed. Disputed facts relevant to disposition of the United States' motion will be denominated as such, and this Court makes no findings as to those facts at this time. Both sides have submitted matter outside the pleadings, but that does not turn the motion (implicitly made, if not explicitly presented, under Fed.R.Civ.P. ("Rule") 12(b)(1)) into one for summary judgment, and the United States has not requested an evidentiary hearing. See *Crawford v. United States of America,* 796 F.2d 924, 927–928 (7th Cir.1986). Citations to the Complaint will simply take the form "¶ —."

**3.** Webster's Third New International Dictionary 1347 (1976) defines "lupus erythematosus" as: a slowly progressive systemic disease of unknown origin marked by degenerative changes of collagenous tissues with erythematous skin lesions, arthritic changes, lesions of internal organs, and wasting by fever, leukemia, and endocarditis[.]

**4.** *None of the Complaint's exhibits is numbered.* This Court has numbered them in the order of their attachment.

**5.** Gregory R.Mem. 1 so states, and United States Mem. 1 accepts that date.

But even on its face that regulation does not *require* an FTCA plaintiff to be either the executor or administrator. Instead it looks to "applicable State law."

Section 1346(b) dictates the state-law reference for FTCA claims (emphasis added):

> [T]he district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, ... for ... personal injury or death caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant *in accordance with the law of the place where the act or omission occurred.*

Toni's death occurred in Hawaii, and (*Hess v. United States*, 361 U.S. 314, 318, 80 S.Ct. 341, 345, 4 L.Ed.2d 305 (1960)):

> liability must therefore be determined in accordance with the law of that place.

Wrongful death actions were unknown at common law and are defined by statute (Prosser & Keeton, *The Law of Torts* § 127, at 945 (5th ed. 1984)). Such statutes have been drafted essentially along two different lines:

> 1. Some define the cause of action as analogous to any personal injury, and when the victim dies the cause of action accrues to his or her estate.
> 2. Others characterize the injury as a loss to specific categories of persons related to or dependent upon the decedent, and those persons may prosecute the action in their own right.

Under the first type of statute the action must be prosecuted by the executor or administrator of the estate (see, e.g., *Addison v. Health and Hospital Governing Commission of Cook County*, 56 Ill.App.3d 533, 535, 14 Ill.Dec. 7, 9, 371 N.E.2d 1060, 1062 (1st Dist.1977)). But Hawaii's statute is of the latter sort (Hawaii Rev.Stat. § 663–3 ("Section 663–3")):

> **Death by wrongful act.** When the death of a person is caused by the wrongful act, neglect, or default of any person, the deceased's legal representative, or any of the persons hereinafter enumerated, may maintain an action against the person causing the death or against the person responsible for the death. The action shall be maintained on behalf of the persons hereinafter enumerated, except that the legal representative may recover on behalf of the estate the reasonable expenses of the deceased's last illness and burial.
>
> In any action under this section, such damages may be given as under the circumstances shall be deemed fair and just compensation, with reference to the pecuniary injury and loss of love and affection, including (1) loss of society, companionship, comfort, consortium, or protection, (2) loss of marital care, attention, advice, or counsel, (3) loss of filial care or attention, or (4) loss of parental care, training, guidance, or education, suffered as a result of the death of the person by the surviving spouse, children, father, mother, and by any person wholly or partly dependent upon the deceased person. The jury or court sitting without jury shall allocate the damages to the persons entitled thereto in its verdict or judgment, and any damages recovered under this section, except for reasonable expenses of last illness and burial, shall not constitute a part of the estate of the deceased. Any action brought under this section shall be commenced within two years from the date of death of the injured person, except as otherwise provided.

Thus each of Gregory and Children has an independent right of recovery for the relevant specified heads of damage under Hawaiian law (*Hun v. Center Properties*, 63 Hawaii 273, 626 P.2d 182, 187 (1981)). No appointment as administrator being a necessary precondition under Hawaiian law, Gregory's First Claim was both timely and sufficient for 28 C.F.R. § 14.3(c) purposes.[6] Gregory and Children are therefore entitled to proceed in this action for recovery up to the $3 million claimed in the First Claim (see 28 U.S.C. § 2675(b)).

---

**6.** As the earlier discussion of wrongful-death statutes makes clear, the role of an administra-

Without further inquiry into Hawaiian tort law (a matter briefed by neither party), that would appear to cover the sorts of damage claimed in Counts I and IV.

### Timeliness: Survival Action

■ Gregory's Second Claim, filed more than two years after Toni's death, asked an additional $3 million for "personal injury" to Toni. That sort of claim equates to the survival action advanced in Count III. Conceptually, survival actions closely resemble the first type of wrongful death statute discussed earlier, under which damages for injuries, pain and suffering experienced by a decedent before death accrue to the decedent's estate. Hawaii Rev.Stat. § 663–7 ("Section 663–7") provides for such actions:

> **Survival of cause of action.** A cause of action arising out of a wrongful act, neglect, or default, except a cause of action for defamation or malicious prosecution, shall not be extinguished by reason of the death of the injured person. The cause of action shall survive in favor of the legal representative of the person and any damages recovered shall form part of the estate of the deceased.

See *Greene v. Texeira*, 54 Hawaii 231, 505 P.2d 1169, 1172 (1973):

> Under HRS § 663–7 there survives in favor of the decedent's legal representative only such cause of action as the decedent himself had at the moment of his death.

Actions under Section 663–7 must be brought by an executor or administrator, and Gregory was neither at the time he filed his First Claim. Because he had become administrator of Toni's estate only when he filed the Second Claim, Count III cannot stand unless that filing occurred within the two-year jurisdictional limitation period.[7] And under Section 2401(b) that in turn depends on when the survival action "accrued": Unless accrual took place on or after December 20, 1983, the Second Claim was out of time.

For that purpose, though FTCA actions are based on state substantive law, federal law governs when a claim "accrues" (*Green v. United States*, 765 F.2d 105, 107 (7th Cir.1985)). *Nemmers v. United States*, 795 F.2d 628, 629 (7th Cir.1986) states the operative rule:

> The time starts to run in a medical malpractice case when the plaintiff has the information necessary to discover "both his injury and its cause." *United States v. Kubrick*, 444 U.S. 111, 120, 100 S.Ct. 352, 358, 62 L.Ed.2d 259 (1979) (footnote omitted). . . .

By definition Gregory knew when the injury—Toni's death—occurred. Thus the key inquiry centers on his knowledge of causation. As to that the cases establish three essential principles:

1. What matters is knowledge of the actual or probable cause of the injury, not knowledge of negligent or reckless behavior (*Green*, 765 F.2d at 107).

2. Gregory's lack of actual knowledge is irrelevant. Rather the test is what a "reasonably diligent person (in the tort claimant's position) reacting to any suspicious circumstances of which he might have been aware would have discovered" (*Drazan v. United States*, 762 F.2d 56, 59 (7th Cir.1985)).

3. Finally, the degree of knowledge needed to set the clock running is nowhere near certainty. As *Nemmers*, 795 F.2d at 632 put it:

> [T]he statute of limitations should not be construed to compel everyone who knows of an injury to scour his medical

---

tor as plaintiff is not simply procedural. Each type of wrongful-death statute defines the entity entitled to recover damages: on the one hand the decedent's estate, and on the other the surviving spouse and children. That distinction goes to the nature of the tort as defined by state law.

**7.** That would of course be true even if Gregory's appointment as administrator were (or could

be) made nunc pro tunc. As this opinion has earlier discussed, 28 U.S.C. § 2675(b) limits FTCA actions to the amount claimed in the pre-lawsuit administrative process. Counts I and IV have eaten up more than the amount Gregory sought in the First Claim. Any demand beyond that initial $3 million must therefore be predicated upon the Second Claim if at all.

records just in case the government's physician did something wrong.... [T]he statute starts to run when a reasonable person would know enough to prompt a deeper inquiry into a potential cause....

It follows from those principles that "knowledge" of the cause of injury may mean only a reasonable person's inkling the injury was induced, compounded or hastened by something the medical staff did or omitted doing. But it also follows that such knowledge of cause cannot be imputed simply from the fact of injury.

How do those concepts interact here? United States R.Mem. 2 says:

[I]t is clear that [Gregory] knew the cause of his wife's death at the time of her death.

But Gregory responds (and the United States of course does not say otherwise) he was told Toni died of lupus—an incurable disease. In *Nemmers* terms that fact alone was not enough to require him to "scour [Toni's] medical records." Were that so, the "cause" branch of the injury-and-cause discovery rule picked out in *Nemmers, Drazan, Green* and *Kubrick* would simply disappear. See also *Crawford*, 796 F.2d at 926 ("a cause of action does not accrue until the plaintiff did [discover] or should have discovered the cause of his injury").

By the inevitable nature of things, the United States and Gregory have differing views as to the date Gregory knew or should have known the cause of Toni's death. That is because the existence vel non of the cause—medical malpractice—is the issue the parties may be expected to contest most hotly. If Toni actually died of an incurable disease, Gregory knew *that* on the day she died, for that was what her doctors told him. But where Gregory's theory of the case is malpractice, the discovery rule does not put the United States in the position of having to argue Gregory should have discovered a cause whose very existence it denies. Instead it is Gregory's burden to establish that if there were malpractice, he could not reasonably have been aware of that fact until after December 20, 1983.[8]

That is the United States' fallback position. Gregory Aff. ¶ 4 admits he first began to wonder about the adequacy of Toni's medical care in "December, 1983," after reading "some materials about lupus." And not only did he wonder: He actually began the inquiry process by calling an attorney, also in "December, 1983" (*id.* ¶ 5). But Tripler did not supply him with the autopsy report until August 24, 1984.

Gregory's "wondering," based on materials he had read, is not enough to start the statute running. As *Stoleson v. United States*, 629 F.2d 1265, 1270 (7th Cir.1980) said:

A layman's subjective belief, regardless of its sincerity or ultimate vindication, is patently inadequate to go to the trier of fact. Therefore, had Mrs. Stoleson sought competent legal advice, she would have been informed quite correctly that she had no claim against the government.

8. *Drazan*, 762 F.2d at 60 says although the statute of limitations is an affirmative defense on which the United States bears the burden of proof, once the United States shows the suit is prima facie untimely, the burden shifts to the plaintiff to show entitlement to an "exception." That burden-shifting analysis seems inconsistent with *Crawford*, 796 F.2d at 927, which held the FTCA limitations period to be jurisdictional (on that premise the burden would always be on the plaintiff, whose affirmative obligation it is to establish subject-matter jurisdiction). At this stage any arguable inconsistency becomes irrelevant: Either way the burden is Gregory's. All the same, the *Drazan* approach is troublesome. Under Section 2401(b) FTCA claims must be presented "within two years after such claim accrues." All the discovery-rule cases cited in this opinion advance the injury-and-cause test as the *definition* of when a claim accrues, not as an exception to the two-year limitations period. Although the statute could have said "within two years after the injury," it used the term "accrues" instead, and the cases have simply given meaning to that word. Thus to be internally consistent the *Drazan* approach should put the burden on the United States to show the claim "accrued" more than two years before it was filed. By construing the two-year period as jurisdictional, however, *Crawford* has foreclosed that line of attack.

Gregory's position in December 1983 was no different. He had nothing to go on but a layman's suspicion based on something he had read (see *Stoleson*, 629 F.2d at 1270: "Mrs. Stoleson's claim did not accrue in the spring of 1969 when she read the union newspaper article suggesting a possible link between cardiovascular problems and exposure to nitroglycerin"). Though he actually retained a lawyer, at the outset the lawyer had no factual basis for filing suit: His initial role was to get hold of the relevant medical reports. In *Kubrick* terms (444 U.S. at 123, 100 S.Ct. at 360), Gregory was not "armed with the facts about the harm done to [Toni]" at least until he received the autopsy report.

*Nemmers*, 795 F.2d at 632–33 points up a related flaw in the United States' argument based on the December 1983 events. Had Gregory filed suit in December 1983, there was at least the potential for imposition of Rule 11 sanctions for filing without adequate prefiling investigation. All he or his attorney had to go on at that stage was a "layman's subjective belief" (*Stoleson*, 629 F.2d at 1270; *Nemmers*, 795 F.2d at 631) that something might have been amiss. Until Gregory had information about what the medical personnel did or omitted doing, he could not reasonably have known of a causal link between those acts or omissions and Toni's death.

True enough, Rule 11 does not require "investigation to the point of certainty" (*Nemmers*, 795 F.2d at 632). But at least where a lawyer has not been consulted on (or close to) the eve of the second anniversary of the injury, the Rule does require some investigation of the predicate facts. Gregory tried to initiate that investigation in December 1983 but had nothing to go on until several months later—in principal part because the Tripler staff simply couldn't or wouldn't get the autopsy report to him sooner. See *Waits v. United States*, 611 F.2d 550, 553 (5th Cir.1980).

Obviously Rule 11 and the discovery rule for FTCA claim accrual do not address the same phenomena and are not interlocking provisions. But "reasonable person" standards apply to both, and it is absurd to say Gregory had a claim at a point where his investigation had yielded no reasonable basis for suit. After all, the policy of avoiding stale claims against the government (*Nemmers*, 795 F.2d at 632) must be offset at least in part by the undesirability of forcing frivolous suits against the government.

This Court need not adopt Gregory's extreme position [9] to hold his Second Claim was not time barred. Even if his claim accrued on the day he received the autopsy report—before he had submitted it to medical experts for their assessment—he filed in plenty of time. On his version of the time sequence (not contested by the United States) he was not dilatory in requesting that report. Instead, Tripler was slow in forwarding it to him. That distinguishes this case from *Kubrick* 444 U.S. at 122, 100 S.Ct. at 359, where plaintiff never made an inquiry into causation, and from *Nemmers* 795 F.2d at 629–30, where plaintiff had in hand a doctor's examination report suggesting a possible cause of injury. As of December 20, 1983 (the relevant clock-starting date for the United States' position) Gregory (through no fault of his own) was simply flying blind.

One final word may be in order: This result is not at all inconsistent with the cases that hold knowledge of matters putting a patient on inquiry will suffice to start the limitations clock running even though the plaintiff has obtained no formal medical report or "second opinion." See, e.g., *Kubrick*, 444 U.S. at 122, 100 S.Ct. at 359; *Green*, 765 F.2d at 108. In such situations the occurrence is unquestionably the result of some human conduct—say the surgical procedure that leaves the shoulder still impaired (see, in the common-law rather than FTCA malpractice context, *Nelson*

---

**9.** Gregory R.Mem. 2 urges the clock did not begin ticking until February 24, 1985, when he received Dr. Rothfield's analysis of Toni's medical records. That is just nonsense: He actually filed the First Claim November 29, 1984, and he cannot now assert his claim did not even "accrue" until three months after that.

*v. Jain,* 526 F.Supp. 1154, 1156–57 (N.D.Ill. 1981), *aff'd mem.* 714 F.2d 150 (7th Cir. 1983)). There the patient cannot play ostrich and say limitations are tolled until actual knowledge of malpractice comes to him or her. By contrast, where the plausible explanation is one of purely natural causes (such as lupus), there is initially no reasonable basis for supposing the doctors did not provide adequate and proper medical care. It is not the purpose of the discovery rule to encourage or reward simple paranoia.

Thus Gregory's Count III survival-action claim stands. It follows that his Count II claim for funeral expenses (which under Section 663–3 also accrues to Toni's estate) likewise stands as timely within the Second Claim.

### Conclusion

Each count of the Complaint survives the United States' motion. This case is set for status at 9:15 a.m. August 19, 1986, at which time the parties will be expected to address a discovery timetable.