Bettye Jo GUALTIER, et al., Plaintiffs,

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 93–2114–GTV.**

United States District Court,
D. Kansas.

Oct. 20, 1993.

Keith E. Drill, Stephen G. Mirakian, Glenn Bradford, Wyrsch, Atwell, Mirakian, Lee & Hobbs, Kansas City, MO, for plaintiffs Bettye Jo Gualtier, Vincent L. Gualtier, Rita Ann Gualtier and Lynda Gualtier.

Christina L. Morris, Janice M. Karlin, Office of U.S. Atty., Kansas City, KS, for defendant.

## MEMORANDUM AND ORDER

VAN BEBBER, District Judge.

This action was brought under the Federal Tort Claims Act (FTCA) by the widow and children of John J. Gualtier, who died on August 4, 1988. Their claim arises from the medical treatment given to Mr. Gualtier by the Veterans Administration (VA) Hospital at Leavenworth, Kansas, during April and May, 1988. Plaintiffs allege that Mr. Gualtier's death was caused in part by the negligence of VA personnel.

This case is before the court on defendant's motion to dismiss for lack of subject matter jurisdiction (Doc. 4) pursuant to Fed. R.Civ.P. 12(b)(1). Defendant claims that plaintiffs' action is barred by the two year statute of limitations under the FTCA for filing an administrative claim with the appropriate federal agency. *See* 28 U.S.C. § 2401(b). For the reasons set forth in this memorandum, the motion is granted.

## I. FACTUAL BACKGROUND

The following factual summary is derived from the allegations contained in plaintiffs' complaint, as well as the affidavits and other documents submitted by the parties in connection with the motion to dismiss. When reviewing a motion to dismiss for lack of subject matter jurisdiction, the court may consider matters outside the pleadings in making its determination. *Matthews v. United States,* 720 F.Supp. 1535, 1536 (D.Kan.1989).

John Gualtier was a 62 year old patient of Dr. Gerald Petersen, who is not a party in this suit. Mr. Gualtier had a carotid endarterectomy performed on April 25, 1988, at the VA Hospital in Leavenworth, Kansas. Subsequent to the operation, VA physicians placed him on Coumadin, a blood thinning medication. On May 3, 1988, Dr. Petersen prescribed Feldene, an anti-inflammatory agent, to Mr. Gualtier. Anti-inflammatory agents such as Feldene are known to interact with the anti-coagulant drug Coumadin re-

sulting in spontaneous bleeding. Neither Dr. Petersen nor the VA Hospital performed any tests on Mr. Gualtier to determine whether there were any adverse effects from the interaction of the two drugs.

On May 31, 1988, Mr. Gualtier was found at home in a coma and was transported to St. Joseph Health Center where he was found to have a subdural hematoma (bleeding around the brain). His bleeding disorder was corrected by giving vitamin K and transfusing fresh frozen plasma. In addition, an emergency craniotomy was performed to remove the blood clot surrounding his brain. He was finally discharged from the hospital on June 22, 1988, but was readmitted on July 5, 1988, with fever and pancytopenia, a generalized decrease in all types of blood cell components. Mr. Gualtier developed hepatitis and other complications and finally died on August 4, 1988.

Vincent L. Gualtier, decedent's son and a plaintiff in this case, consulted with attorney Glenn E. Bradford in the fall of 1989 regarding a possible medical malpractice action. Mr. Gualtier was unhappy with the care that his father received from physicians at St. Joseph Health Center during July and August, 1988, and suspected that their treatment may have been defective in not properly treating his father's hepatitis. Mr. Bradford subsequently consulted with Julie B. Bogart, a graduate nurse, who is in the business of reviewing records and consulting with lawyers regarding medical issues.

After reviewing medical records from Dr. Petersen and St. Joseph Health Center, Ms. Bogart met with Mr. Bradford and Mr. Gualtier on April 18, 1990. She advised them that she could find no fault with the treatment given to the decedent at St. Joseph Health Center in the weeks prior to his death in August, 1988. She indicated that the transfusion of fresh frozen plasma given to decedent on May 31, 1988, was proper even though this type of transfusion carried a risk that undetectable human viruses may be transmitted.

At the April 18th meeting, Ms. Bogart also raised a question as to the cause of decedent's brain hemorrhage on May 31, 1988.

She noted that decedent's prothrombin time, or bleeding time, was unusually high when he entered the hospital. She recounted that Dr. Petersen's records indicated that Dr. Petersen prescribed the drug Feldene and was aware that VA Hospital personnel had placed decedent on Coumadin, but the records did not show any monitoring of prothrombin time by Dr. Petersen or any communication to the VA regarding the Feldene prescription. Ms. Bogart suggested that plaintiffs' attorney obtain the VA records to determine whether Dr. Petersen had been in contact with the VA regarding decedent's Coumadin therapy.

Mr. Gualtier and Mr. Bradford then discussed the possibility of filing suit against Dr. Petersen. Since the statute of limitations for bringing an action in state court was to expire on May 3, 1990, they decided to file the suit in Missouri state court without having any medical authority to support their allegations. Missouri statute, Mo.Rev.Stat. § 538.225, allows suit to be brought if a physician's affidavit can be obtained within ninety days of the date the suit is filed.

The action against Dr. Petersen, filed in Missouri state court on May 3, 1990, alleged that Petersen was negligent in that he prescribed the drug Feldene to decedent who was already taking the drug Coumadin, without providing for monitoring of blood viscosity, prothrombin time, or bleeding time. The suit alleged that as a result of this failure to monitor, decedent suffered a brain hemorrhage and his life could be saved only by a transfusion of fresh frozen plasma containing vitamin K. The petition further alleged that the plasma contained the hepatitis virus, that decedent contracted hepatitis, and that this caused or contributed to his death.

Mr. Bradford, plaintiffs' attorney, requested decedent's medical records from the VA Hospital on April 19, 1990. The VA responded on April 25, 1990, and Mr. Bradford acknowledges that he was in receipt of the records by the end of April. Mr. Bradford took no further action with respect to those records until early May when he sent them to Dr. James Hayden, M.D., who was to review the case. On July 26, 1990, Dr. Hayden wrote to Mr. Bradford and gave his opinion that decedent's brain hemorrhage resulted from spontaneous bleeding caused by the combination of Feldene and Coumadin, and that this event and the complications resulting from its treatment resulted in decedent's death.

Dr. Hayden's letter indicated that Dr. Petersen was negligent in failing to monitor decedent's response to the drug that he prescribed, but it did not offer any opinion as to possible negligence on the part of VA personnel. Dr. Hayden did indicate, however, during a deposition given on October 12, 1990, that the VA physicians may also have some liability.

Plaintiffs finally filed a claim with the VA on May 18, 1992, for $1,000,000 in damages resulting from personal injury and wrongful death. The VA responded on November 13, 1992, finding no negligence on the part of the VA and also finding that the claim was barred by the statute of limitations. This action was then filed on March 22, 1993.

## II. DISCUSSION

The only issue for the court to resolve at this time is whether the plaintiffs complied with the FTCA statute of limitations requirements.

The FTCA makes the United States liable in tort "in the same manner and to the same extent as a private individual under the circumstances." 28 U.S.C. § 2674. The state where the negligent act or omission occurred supplies the substantive tort law. 28 U.S.C. § 1346(b). The statute of limitations, however, is governed by federal law. *Green v. United States*, 765 F.2d 105, 107 (7th Cir.1985). Under the FTCA, a tort claim against the United States is forever barred "unless it is presented to the appropriate Federal agency within two years after such claim accrues."[1] 28 U.S.C. § 2401. When a claim "accrues" within the meaning of the FTCA is also a question of federal law. *United States v. LePatourel*, 593 F.2d 827,

---

1. The second limitations period requirement, that the "action is begun within six months after the date of mailing ... of notice of final denial of the claim by the agency," is not an issue in this case. *See* 28 U.S.C. § 2401(b).

830 (8th Cir.1979). Compliance with the two-year statute of limitations is required to give the federal court subject matter jurisdiction. *Crawford v. United States,* 796 F.2d 924, 927 (7th Cir.1986).

■ The task in this case is determining when the plaintiffs' claim accrued. The Supreme Court, in *United States v. Kubrick,* 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979), provided the framework for determining when a medical malpractice claim accrues under the FTCA. *Kubrick* established the general rule that a cause of action accrues under the FTCA when "the plaintiff has discovered both his injury and its cause." *Id.* at 120, 100 S.Ct. at 358. Accrual does not await the plaintiff's discovery that his injury resulted from malpractice or negligence. Rather, once a plaintiff is aware of the "critical facts" underlying his injury and its cause, the limitations period begins to run. The plaintiff can then consult with medical or legal professionals to determine whether his injury was the result of negligence. *Id.* at 123, 100 S.Ct. at 360. *See also Gustavson v. United States,* 655 F.2d 1034, 1036–37 (10th Cir.1981) (date of accrual is date of notice of injury and its cause; knowledge of malpractice is irrelevant to the running of the statute of limitations). The plaintiff also has a duty to diligently inquire as to the cause of his injury. *Arvayo v. United States,* 766 F.2d 1416, 1421 (10th Cir.1985). The standard is an objective one, with the cause of action accruing when a "reasonable person" would have discovered both the injury and the cause. *Id.* at 1422.

■ The parties in this case agree that the claim was received by the VA on May 18, 1992. If the plaintiffs' claim accrued on May 18, 1990, or later, then the statute of limitations requirement has been satisfied. If, however, the claim accrued at any time prior to May 18, 1990, then the action must be dismissed on jurisdictional grounds for failure to meet the FTCA statute of limitations. There is no question that the plaintiffs were aware of the injury prior to May 18, 1990; the only issue is when they first had knowledge of the cause of the injury.

Defendant argues that the plaintiffs' claim accrued no later than May 3, 1990, when plaintiffs filed their suit against Dr. Petersen. Defendant contends that the state court petition indicates that plaintiffs had knowledge of both the injury and the cause, and that if they had determined that Dr. Petersen's acts or omissions were the cause of decedent's injuries, they should also have discovered the same acts or omissions on the part of the VA physicians. Defendant further notes that plaintiffs' attorney had received the VA records before the end of April, 1990, and a review of those records at that time would have revealed that some of the same acts and omissions allegedly committed by Dr. Petersen were also allegedly committed by the VA personnel.

Plaintiffs contend that the cause of action did not accrue until October 12, 1990, when, for the first time, plaintiffs' medical consultant, Dr. Hayden, indicated to plaintiffs through his deposition testimony that the VA may also be liable.[2] According to plaintiffs, the lawsuit filed against Dr. Petersen was filed based on the subjective layman's suspicions of plaintiff Vincent Gualtier and attorney Bradford, and that it was not until July 26, 1990, that they finally received a competent medical opinion, in the form of a letter from Dr. Hayden, that substantiated the basic elements of their claim against Dr. Petersen. Even then, Dr. Hayden offered no opinion as to the possible liability of the VA.

Plaintiffs' argument can be summarized as follows: prior to July 26, 1990, they had only "subjective layman's suspicions" that decedent's death may have been related to the Coumadin therapy. They suspected, but did not "know," that this was a cause of decedent's injury. Further, prior to October 12, 1990, plaintiffs had no medical opinion, and therefore no knowledge, that the VA was possibly liable, along with Dr. Petersen.

At the outset, plaintiffs' argument that the cause of action did not accrue until October

---

2. Plaintiffs have not provided the court with any excerpts of Dr. Hayden's deposition testimony and the court is thus unable to determine exactly what Dr. Hayden said about possible negligence on the part of VA physicians. As explained later, however, the outcome of this motion does not depend on the existence of the alleged testimony.

12, 1990, must be rejected. Prior to October, the plaintiffs had received a medical opinion as to the cause of decedent's injuries and death. The only information added on October 12 was the medical expert's suggestion that the VA may also be liable, in addition to Dr. Petersen. As previously stated, the *Kubrick* Court held that a cause of action for medical malpractice accrues under the FTCA on the date when the plaintiff discovers the injury and its cause. Accrual does not "await awareness by the plaintiff that his injury was negligently inflicted." *Kubrick,* 444 U.S. at 123, 100 S.Ct. at 360. "The Court expressly disapproved of circuit decisions holding that accrual does not occur until a claimant has knowledge that the acts causing injury might constitute medical malpractice." *Robbins v. United States,* 624 F.2d 971, 972 (10th Cir. 1980) (citing *Kubrick,* 444 U.S. at 121, 100 S.Ct. at 359). Thus, the question of plaintiffs' knowledge of the VA's negligence is irrelevant.

The question remains whether the plaintiffs had sufficient knowledge as to the cause of decedent's injuries prior to May 18, 1990, or whether their suspicions did not ripen into knowledge until receipt of Dr. Hayden's letter of July 26, 1990. The weight of the evidence in this case compels a finding that the plaintiffs had adequate knowledge regarding causation prior to May 18, 1990.

Obviously, more than one cause is applicable in this case. Decedent's death was caused by hepatitis and its complications. According to plaintiffs' theory, the hepatitis was caused by the plasma transfusion which was needed because decedent suffered a subdural hematoma caused by a failure to monitor his Coumadin therapy. Only the failure to monitor, occurring early in the chain of causation, implicates a possible "government cause." "When there are two causes of an injury, and only one is the government, the knowledge that is required to set the statute of limitations running is knowledge of the government cause, not just of the other cause." *Drazan v. United States,* 762 F.2d 56, 59 (7th Cir.1985). *See also Arvayo v. United States,* 766 F.2d 1416, 1420 (10th Cir.1985) ("[T]he word 'cause' ... mean[s] more than mere awareness of the medical cause in cases involving a failure to diagnose, treat, or warn."); *Gustavson v. United States,* 655 F.2d 1034, 1036–37 (10th Cir. 1981) (recognizing that the cause of plaintiff's kidney damage was not simply his ureter disorder, but also the military doctors' failure to correct that disorder at an earlier time).

When plaintiffs first began investigating a possible action, they focused on the liability of St. Joseph's Health Center, and the treatment that St. Joseph's personnel provided during the weeks immediately preceding decedent's death. By the end of April, 1990, however, the plaintiffs had access to the medical records of both Dr. Petersen and the VA Hospital showing a failure to monitor decedent's prothrombin time. They also had an opinion by a non-physician medical consultant suggesting that such failure to monitor could have led to the complications which resulted in decedent's death. It cannot be said that prior to May, 1990, the plaintiffs had no information relating to the "government cause" which is now the focus of their claim.

Plaintiffs argue that this information was not sufficient to impart "knowledge" of the cause upon the plaintiffs, but rather only a "suspicion," at least until they had received some type of verification in the form of a doctor's opinion. In making this argument, the plaintiffs have misinterpreted the degree of certainty required to start the time running for purposes of the FTCA two year limitations period.

One court described that certainty as follows:

> The putative plaintiff need not know that the suspicious event is more likely than not the cause. He may need discovery to determine the most likely cause, and *Kubrick* emphasizes that the running of the statute of limitations does not depend on having enough information to prevail at trial. Similarly, the would-be plaintiff need not know that the injury is iatrogenic (induced by a physician). Oversight may "cause" harm even though none of the physician's acts makes a natural condition worse. Knowledge, actual or imputed, of either iatrogenic injury or oversight when atten-

tion was called for may cause the claim to accrue.

*Nemmers v. United States,* 795 F.2d 628, 631–32 (7th Cir.1986). Another court, citing *Nemmers,* concluded that:

"[K]nowledge" of the cause of injury may mean only a reasonable person's inkling that the injury was induced, compounded or hastened by something the medical staff did or omitted doing.... This result is not at all inconsistent with the cases that hold knowledge of matters putting a patient on inquiry will suffice to start the limitations clock running even though the plaintiff has obtained no formal medical report or "second opinion."

*Thompson v. United States,* 642 F.Supp. 762, 766–67 (N.D.Ill.1986).

Applying this standard to the facts of this case, the court finds that the plaintiffs were armed with sufficient information in April, 1990, to start the limitations period running. They had both a plausible theory provided by a medical professional regarding the failure to monitor, and they also had all the medical records necessary to confirm that such a failure had occurred. The court notes that a number of decisions have treated the receipt of medical records as a significant event in triggering the start of the limitations period. *See, e.g., Nemmers,* 795 F.2d 628, 632 (7th Cir.1986) ("A medical report stating that there is a significant chance that an event caused an injury therefore is enough to start the period, which requires the claimant to begin his investigation."); *Harrison v. United States,* 708 F.2d 1023, 1028 (5th Cir.1983) (Plaintiff's "privately conceived notions did not become knowledge until July 1976 when she received copies of her medical records."); *Waits v. United States,* 611 F.2d 550, 553 (5th Cir.1980) (Plaintiff could not know "that the VA Hospital had negligently injured him until the hospital records were delivered to [plaintiff's attorney]."); *Raymer v. United States,* 609 F.Supp. 1332, 1339 (E.D.Mo.1985) (finding that plaintiff's claim did not accrue until he obtained his medical records from the VA Hospital). None of these cases held that accrual of the cause of action should be postponed until those medical records could be reviewed, and an opinion rendered, by an independent physician. *But see Gould v. United States,* 684 F.Supp. 508, 512–13 (N.D.Ill.1988) (statute of limitations not triggered when mother obtained child's medical records which were then reviewed by a physician who could still not determine the cause of child's problems).

In support of their argument, plaintiffs have cited several cases for the proposition that subjective layman opinions are not sufficient to trigger the running of the limitations period. *See Stoleson v. United States,* 629 F.2d 1265, 1270 (7th Cir.1980) (no accrual of cause of action based on plaintiff's reading of union newspaper article and suggestion by occupational safety specialist when medical science had not yet established a relationship between occupational exposure to nitroglycerin and cardiovascular problems); *Gould,* 684 F.Supp. at 512 (N.D.Ill.1988) (statute of limitations not triggered by mere suspicions in combination with receipt of medical records when physician reviewing records could not determine cause of injury); *Thompson v. United States,* 642 F.Supp. 762, 767 (N.D.Ill. 1986) (no accrual of cause of action based on plaintiff reading material which raised suspicion and contacting attorney to look into matter, when autopsy report not received until several months later). The facts in this case, however, are easily distinguished from those in the cited cases. In none of those cases had the plaintiffs both retained an attorney to investigate potential malpractice, *and* obtained medical records that contained information substantiating a scenario that was suggested by a medical consultant who identified the potential cause. Further, in none of those cases had the plaintiffs actually filed suit in which the same cause of injury was alleged as is being alleged in the current suit against the government defendant.

■ Finally, plaintiffs' analogy to the amount of investigation required by Rule 11 prior to filing suit is irrelevant to the issue in this case. *See* Fed.R.Civ.P. 11. The Rule 11 standard relates to the filing of an action in federal court. Accrual of the FTCA statute of limitations deals not only with the filing of an *administrative* claim, it also relates only to the *triggering* of the two year time limit for filing that claim. There is no basis for

applying the same standard to these two different events. *See Thompson v. United States,* 642 F.Supp. 762, 767 (N.D.Ill.1986) ("Rule 11 and the discovery rule for FTCA claim accrual do not address the same phenomena and are not interlocking provisions.")

### III. CONCLUSION

The weight of the evidence shows that plaintiffs had sufficient knowledge of the cause of decedent's injury by no later than the end of April, 1990. Plaintiffs from that point in time had two years in which to investigate further and to file their administrative claim with the VA. Since that claim was not filed until May 18, 1992, this court does not have jurisdiction over this action filed pursuant to the FTCA.

IT IS, THEREFORE, BY THE COURT ORDERED that defendant's motion to dismiss for lack of subject matter jurisdiction (Doc. 4) is granted.

This case is dismissed.

IT IS SO ORDERED.