62 F.3d 1419
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Paul ODEN, Plaintiff-Appellant,
v.
Dr. Howard MUELLER, Dr. Owen MURRAY, Pauline SOHN, and
Debbie RAMSEYER, Defendants-Appellees.
 No. 94-1946.
 United States Court of Appeals, Seventh Circuit.
 Submitted July 13, 1995.*
Decided July 14, 1995.
 
 Before FLAUM, RIPPLE, and KANNE, Circuit Judges.
 
 ORDER
 
 1
 Paul Oden, while an inmate at the Pontiac Correctional Center in Pontiac, Illinois, filed a pro se complaint under 42 U.S.C. Sec. 1983 against three officials at Pontiac.[1] Oden alleged that the defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by failing to adequately treat him for his systemic lupus erythematosus. The defendants filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6) which was later changed to a motion for summary judgment, Fed. R. Civ. P. 56(e). The district court granted the defendants' motion for summary judgment, entering judgment against Oden and in favor of the defendants. This timely appeal follows.
 
 
 2
 On appeal, Oden challenges the district court's entry of summary judgment. A district court's decision to grant or deny a motion for summary judgment is reviewed de novo. Cooper v. Lane, 969 F.2d 368, 370 (7th Cir. 1992) (citing Carston v. The County of Cook, 962 F.2d 749, 751 (7th Cir. 1992); Pro-Eco v. Board of Comm'rs of Jay County, Ind., 956 F.2d 635, 637 (7th Cir. 1992)). Summary judgment is proper where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Cooper, 969 F.2d at 370. In making this determination, we must "view the record and all inferences drawn from it in the light most favorable to the party opposing the motion." Cooper, 969 F.2d at 371 (citations omitted). Moreover, "'the party moving for summary judgment has the burden of establishing the lack of a genuine issue of material fact."' Cooper, 969 F.2d at 371 (quoting Big O Tire Dealers, Inc. v. Big O Warehouse, 741 F.2d 160, 163 (7th Cir. 1984)). However, "summary judgment must be entered 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."' Cooper v. Lane, 969 F.2d 368, 371 (7th Cir. 1992) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).
 
 
 3
 Viewing the record and all reasonable inferences from it in the light most favorable to Oden, the circumstances surrounding Oden's claim under Sec. 1983 are as follows. Oden was first diagnosed as having systemic lupus erythematosus in 1980.[2] In anticipation of Oden's impending incarceration, on March 16, 1983, Dr. Gregory Shove (a doctor at Rheumatology Department of the Cook County Hospital who had been treating Oden since his diagnosis of lupus) wrote a letter stating that during Oden's period of confinement, it was imperative that Oden have access to a physician familiar with the use of rheumatological medications and who was familiar with the manifestations of systemic lupus erythematosus. Dr. Shove also recommended that Oden be allowed to be seen at the Cook County Hospital Rheumatology Department once every six weeks. This letter was placed in Oden's medical file. Dr. Mueller, then the Medical Director at Pontiac, knew about Dr. Shove's letter and attempted to find a rheumatologist closer to Pontiac. The record does not indicate what treatment Oden did or did not receive between 1983 and 1991.
 
 
 4
 On May 13, 1991, Dr. Mueller scheduled an outside visit for Oden with a rheumatologist. However, Oden was mistakenly sent to Dr. Solomon, a urologist. Dr. Solomon provided Oden, and the officer accompanying him, with the name and address of the rheumatologist Oden had been scheduled to see. Oden returned to Pontiac with this information and turned it into the Health Care Unit. On May 28, 1991, Oden complained to an unnamed doctor at Pontiac that he had difficulty swallowing and keeping food down. Accordingly, on August 29, 1991, Oden was sent to Saint James Hospital in Pontiac, Illinois to see Dr. Bello, a rheumatologist. Dr. Bello advised that Oden be seen again as soon as Pontiac could transfer his medical records. Pauline Sohn, Health Care Unit Administrator, and Debbie Ramseyer, Medical Records Supervisor, did not refer Oden back to Dr. Bello or have him see another rheumatologist. On February 27, 1992, Dr. Murray first examined Oden.[3] Although Dr. Murray was aware of Dr. Bello's recommendation that Oden see a rheumatologist, based on his past experiences with lupus patients and noting that Oden's condition was stable, Dr. Murray did not feel that Oden had an immediate need to see a rheumatologist. Oden requested convalescent status which was denied by Dr. Murray.[4]
 
 
 5
 Nonetheless, Dr. Murray kept track of Oden's status, visiting him in the health care unit every two months and conducting numerous informal visits to his cell. Oden saw a rheumatologist on October 23, 1992 when he was examined by Dr. Solon at the University of Illinois Hospital. Dr. Solon changed Oden's medication and recommended that he have an upper gastro intestinal (g.i.) endoscopic evaluation. Pontiac health care providers followed his recommendation and on November 9, 1992, Oden was sent to Dr. Kottoor, a Rheumatologist, at Saint James Hospital in Pontiac, Illinois. Dr. Kottoor noted that Oden complained of difficulty in swallowing and keeping food down and concluded that this might be connected to his systemic lupus erythematosus. Dr. Kottoor agreed with Dr. Solon that an upper g.i. endoscopic evaluation was necessary. On December 2, 1992, Dr. Kottoor performed an upper g.i. endoscopic evaluation on Oden. Dr. Kottoor found a hiatal hernia[5] and esophageal stricture[6] in Oden's esophagus. These conditions were thought to be the result of the anti-inflammatory medications that Oden had been receiving to treat his lupus. Accordingly, Oden's medication was changed. On December 21, 1992, Oden was placed on the Convalescent Gallery. On September 1, 1993, Oden regurgitated food mixed with blood.
 
 
 6
 In order for an inmate to state a claim under Sec. 1983 for medical mistreatment or denial of medical care, the prisoner must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). Deliberate indifference exists when an official knows of and disregards a serious medical condition and the official is "aware of facts from which the inference be drawn that a substantial risk of harm exists, and he must also draw the inference." Farmer v. Brennan, 114 S. Ct. 1970, 1979 (1994). Hence, "[m]ere negligence on the part of a physician in diagnosing or treating a medical condition will not, in and of itself, suffice. Similarly, excusable delay in properly treating an inmate that does not amount to deliberate indifference, does not rise to the level of a cognizable eighth amendment claim." Murphy v. Lane, 833 F.2d 106, 107 (7th Cir. 1987) (citing Estelle, 429 U.S. at 106; Shockley v. Jones, 823 F.2d 1068, 1072 (7th Cir. 1987). In addition, "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an 8th Amendment violation only if those needs are 'serious."' Hudson v. McMillian, 503 U.S. 1, 9 (1992) (citing Estelle, 429 U.S. at 103-104); Brownell v. Figel, 950 F.2d 1285, 1291 (7th Cir. 1991).
 
 
 7
 Lupus is a serious medical condition. See Cheeney v. Highland Community College, 819 F. Supp. 749, 749 n. 1 (N.D.Ill. 1993) ("Lupus is a slowly progressive systemic disease of unknown origin which can prove fatal.") (citing Thompson v. United States, 642 F. Supp. 762, 763 (N.D.Ill. 1986)), aff'd, 15 F.3d 79 (7th Cir. 1994). However, there is no evidence of any deliberate indifference to this condition. Regarding Sohn and Ramseyer, Oden argues that their deliberate indifference is evidenced by their failure to refer him to a rheumatologist (or refer him back to Dr. Bello), despite the fact that Dr. Bello had advised that Oden be seen by one. However, it was Dr. Murray and not Sohn and Ramseyer who had the final say in this matter - Dr. Murray decided that, at least for the time being, a rheumatologist was not necessary.
 
 
 8
 Oden claims that Dr. Murray's deliberate indifference is demonstrated by his failure to refer Oden to a rheumatologist despite Dr. Shove's 1983 letter recommending that he see a rheumatologist every six weeks, and Dr. Bello's recommendation that Oden see a rheumatologist in the near future. While it is true that Dr. Murray did not follow these recommendations, Dr. Murray did not ignore Oden's medical condition or fail to treat it. Dr. Murray did not agree that Oden needed to see a rheumatologist as frequently as recommended in Dr. Shove's letter or as soon as was recommended by Dr. Bello. However, Dr. Murray kept track of Oden's condition and, when he felt it was appropriate, did send Oden to a rheumatologist. Moreover, when an upper g.i. endoscopic examination was recommended, it was authorized by Dr. Murray and Oden's treatment was changed accordingly. Regarding Oden's September 1, 1993 regurgitation of food and blood, there is nothing in the record to indicate that this was the result of any denial of medical treatment, nor is there any evidence demonstrating that once this condition presented itself, it was not treated.[7] There is nothing in the record which demonstrates that Dr. Murray's failure to allow Oden regular visitations with a rheumatologist caused Oden any unnecessary suffering or serious injury. Even assuming arguendo that Dr. Murray erred in waiting to refer Oden to a rheumatologist, this evidences, at most, negligence; not deliberate indifference. Clearly, Oden's claim of medical mistreatment is not actionable under Sec. 1983.
 
 
 9
 Accordingly, the judgment of the district court is AFFIRMED.
 
 
 
 *
 The appellees notified this court that they did not intend to file a brief. After preliminary examination of the appellant's brief, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed. R. App. P. 34(a); Cir. R. 34(f). Appellant has filed a statement requesting oral argument. Upon consideration of that statement, the appellant's brief, and the record, the request for oral argument is denied and the appeal is submitted on the brief and record
 
 
 [1]
 The following officials at Pontiac were originally named as defendants: Dr. Howard Mueller, former Medical Director; Dr. Owen Murray, Medical Director; Pauline Sohn, Health Care Unit Administrator; and Debbie Ramseyer, Medical Records Supervisor. Since Dr. Mueller was deceased at the time the complaint was filed and his estate was never substituted as a defendant, the district court dismissed him from the complaint for lack of jurisdiction. After the initial complaint was filed, Oden filed a motion to amend the complaint to add two parties - Howard Peters, Director of the Illinois Department of Corrections; and Richard Gramley, Warden at Pontiac. Since Oden's motion to amend did not allege that these defendants had any personal involvement in the alleged unconstitutional conduct, the district court denied his motion to amend
 
 
 [2]
 Systemic lupus erythematosus is a chronic, remitting disorder of the connective tissue of unknown origin. Dorland's Illustrated Medical Dictionary (27th ed. 1988) at 958
 
 
 [3]
 Dr. Murray replaced Dr. Mueller as Medical Director at Pontiac. Since there is nothing in the record, however, indicating when Dr. Murray replaced Dr. Mueller, we will assume Dr. Mueller was replaced around the time of Dr. Murray's first treatment of Oden
 
 
 [4]
 Oden was granted convalescent status only after he had surgery on his right middle finger and after he had been seen by a rheumatologist, Dr. Kottoor, twice
 
 
 [5]
 A hiatal hernia is a "herniation of an abdominal organ, usually the stomach, through the esophageal hiatus of the diaphragm." Dorland's Illustrated Medical Dictionary at 756
 
 
 [6]
 A stricture is a "decrease in the caliber of a canal, duct, or other passage, as a result of cicatricial contraction or the deposition of abnormal tissue." Dorland's Illustrated Medical Dictionary at 1594
 
 
 [7]
 The record also indicates that Oden waited approximately three months to see a rheumatologist despite his complaints that he had difficulty swallowing and keeping food down. First, there is nothing in the record to indicate that he received no treatment for three months - only that he did not see a rheumatologist during that time. Moreover, this occurred while Dr. Mueller was Medical Director and, therefore, cannot be charged to Dr. Murray